**William B. ADAMS, Appellant,**

v.

**STAXXRING, INC. and Molly Langford, Appellees.**

No. 05–10–01142–CV.

Court of Appeals of Texas, Dallas.

July 7, 2011.

Rehearing Overruled Aug. 11, 2011.

Timothy D. Zeiger, Shackelford, Melton & McKinley, Dallas, TX, for Appellant.

Price Lewis Johnson, The Johnson Firm, F. Leighton Durham III, Kirk L. Pittard, Kelly, Durham & Pittard, LLP, Dallas, TX, for Appellees.

Before Justices MURPHY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice MURPHY.

William B. Adams appeals the trial court's denial of his motion to compel arbi-

tration of the lawsuit filed by Molly Langford and StaxxRing, Inc. We conclude Adams waived any right to arbitration and affirm the trial court's order.

## BACKGROUND

Langford and Adams are each fifty-percent owners of StaxxRing, a closely held corporation in the jewelry business. The trial court described their underlying dispute as a power struggle over the control of StaxxRing, which "more nearly resembles a corporate food fight." Because of the nature of the dispute and our consideration of the level to which Adams invoked the judicial process, our review of background information is detailed.

### The Pleadings and Injunctive Relief

The litigation began on June 22, 2009, when StaxxRing and Langford[1] filed suit against Adams alleging he usurped Langford's authority and undermined her efforts as president of StaxxRing. The petition included a jury demand and claims for breach of fiduciary duty, tortious interference, negligence, conversion, theft of property and violations of the theft liability act, and a violation of the Uniform Fraudulent Transfer Act. Langford and StaxxRing sought declaratory and injunctive relief as well as a constructive trust, damages, attorney's fees, and exemplary damages.

The next day, with allegations Langford was "freezing" him out of StaxxRing, Adams answered the lawsuit; asserted affirmative defenses of fraud, unclean hands, and estoppel and quasi-estoppel; and counterclaimed against Langford for fraud, conversion, and shareholder oppression, requesting damages, exemplary damages, and attorney's fees. Adams also joined as

a defendant Robert Swift, StaxxRing's sales manager, and alleged claims of breach of fiduciary duty against Swift and Langford individually. Quoting from StaxxRing's bylaws, Adams demanded inspection of StaxxRing's books and records and sought injunctive relief, the appointment of a receiver for StaxxRing, expedited discovery, and rule 194 disclosures.

Counsel for Adams sent a letter to the trial court the next day, June 24, requesting a hearing to "entertain Adams' motion for expedited discovery on an expedited basis." On June 25, Adams's counsel requested and participated in a telephone conference with the trial court and plaintiffs' counsel. The trial court granted Adams's request and ordered Langford to provide StaxxRing's books and records no later than July 2, 2009.

Adams also amended his answer and counterclaim on July 1, adding third-party claims for conversion and negligence against Bank of America, N.A., the depository for StaxxRing's operating funds. Adams added the Bank to his request for injunctive relief and included a demand for accounting by StaxxRing. Adams again cited to and quoted StaxxRing's bylaws, and attached the entirety of the bylaws to an affidavit included in his amended answer. Article II, section 13 of the bylaws provides:

> *Arbitration.* All claims, disputes, demands or disagreements, relating to or arising out of, directly or indirectly, this Article II among the shareholders of the Corporation shall be settled by arbitration in Dallas, Texas. Such arbitration shall be subject to the Texas General Arbitration Act and the rules of the

---

1. The suit is styled *"StaxxRing, Inc.; and Molly Langford ex rel. StaxxRing, Inc. v. William Bryan 'Bill' Adams,"* but both the original petition and first amended petition state that the suit "is brought on behalf of the Company and Ms. Langford individually" against Adams.

American Arbitration Association, in accordance with this Section 13.... Any determination by such arbitrator(s) shall be a conclusive determination of the matter, shall be binding upon the shareholders and shall not be contested by them.

At Adams's request, the trial court held a hearing on his application for temporary restraining order on July 2. The trial court granted Adams's request as to Langford in part, finding Adams "is likely to prevail on the merits of at least one of his claims." The same day, the trial court ordered Adams and Langford to mediation. As of the date this appeal was filed, the parties had mediated twice unsuccessfully.

Eight days after the TRO hearing, Adams served Langford with a subpoena duces tecum to produce documents by July 16, the day before the hearing on the parties' cross-applications for temporary injunctions. The subpoena requested nine groups of documents related to Langford's net worth as well as the financial position of StaxxRing. Objecting to the requests, Langford filed a motion to quash and for a protective order. Pursuant to the parties' agreement, the court signed an order requiring Langford to produce documents but otherwise granting Langford's motion.

Also on July 16, Langford and StaxxRing filed a first amended petition, embellishing the factual background and including an allegation of sexual harassment against Adams. The amended petition included Langford's affidavit attaching several documents, including StaxxRing's financial records. The same day, Adams supplemented his first amended counterclaim by adding an indemnification claim for legal fees pursuant to the StaxxRing bylaws.

The temporary-injunction hearing began on July 17, 2009. The appellate record does not include a reporter's record of the hearing, but the trial court characterized it as involving "substantial testimonial and documentary evidence." Langford testified at the hearing and was subject to cross-examination by Adams's counsel. The hearing lasted for several days and concluded July 22, 2009.

The same day, Adams filed his second supplement to his first amended counterclaim in which he added a breach-of-contract claim against Langford and StaxxRing, jointly. He maintained his requests for injunctive relief, attorney's fees, expedited discovery, appointment of a receiver, and indemnification pursuant to StaxxRing's bylaws.

On July 23, 2009, the day after the injunction hearing concluded, Adams filed a letter brief in support of his requested injunctive relief. On July 25, the trial court granted injunctions in part for both sides, finding they were "likely to prevail on the merits" of at least one of their respective claims. The court set trial for January 11, 2010 as part of the same order.

Just over a week later, Adams filed a motion to clarify or modify the temporary injunction, relying on StaxxRing's bylaws. Adams also described a line of credit to StaxxRing he personally had guaranteed through Fidelity Bank and expressed concern that Fidelity would call the note due and payable on its maturity date of August 7, 2009.

The trial court heard Adams's motion on August 20 and, on August 24, 2009, signed its order denying Adams's request for clarification. As part of its order, the trial court stated it "has also had the opportunity to keenly observe the in-court demeanor of the parties (as witnesses and participants) and their actions since the filing of this lawsuit." Commenting that Adams's "mission has begun to take on the appear-

ance of a vendetta," the trial court added that "the unchallenged evidence before the Court indicates that Adams only recently deliberately used his personal relationships to interfere with and influence the termination of a [StaxxRing] line of credit at Fidelity Bank." Questioning the validity of Adams's third-party claims against the Bank, the trial court noted "Adams continues to vigorously press claims against Bank of America, the admitted purpose of which is to force a termination of (or 'freeze,' as Adams puts it) [StaxxRing's] bank account. . . . " The trial court concluded the order with the "further opinion that at any future hearings at which he is present, Defendant Adams must seek advance approval of the Court before leaving the courtroom." Adams subsequently nonsuited his claims against the Bank.

On October 30, 2009, Adams filed a second amended answer and counterclaim, adding claims against Langford for equitable buy-out and malicious suppression of dividends. He maintained his request for injunctive relief, appointment of a receiver, inspection of books and records, accounting, attorney's fees, and damages.

On November 23, 2009, Adams paid the jury fee.

In December 2009, both sides filed motions for contempt, claiming violations of the temporary injunction.

### Discovery

Meanwhile, Adams pursued additional discovery from Langford and StaxxRing. After the initial expedited discovery, which included the subpoena duces tecum served on Langford and the related order, Adams served Langford and StaxxRing with merits discovery consisting of twenty-six requests for production of documents and additional requests for disclosure. On September 25, 2009, Adams served a second request for production of documents, which included twenty-three requests for documentation supporting StaxxRing's balance sheet and profit-and-loss statement produced earlier. Upon receipt of Langford and StaxxRing's responses to his requests for documents, Adams filed a motion and supplemental motion to compel, attaching the discovery responses as well as Langford's testimony from the temporary-injunction hearing where she was cross-examined by Adams's counsel.

During the same time period, Adams resisted discovery. On September 2, 2009, he filed a motion seeking to quash a subpoena and document request Langford and StaxxRing directed to Fidelity. In late October, Langford and StaxxRing served a deposition notice for Adams and two others, which Adams promptly moved to quash. StaxxRing and Langford responded with a motion to compel and a motion for attorney's fees, costs, and sanctions, attaching correspondence evidencing a history of their attempts to depose Adams. In November, Langford and StaxxRing served another deposition notice for Adams and the same two individuals; again, Adams filed a motion to quash. In July of 2010, StaxxRing and Langford served Adams with their last deposition notice, which Adams again moved to quash and for a protective order. StaxxRing and Langford filed a second motion to compel Adams's deposition and a motion for sanctions.

### The Rule 12 Motion

In early October 2009, after serving Langford and StaxxRing with multiple discovery requests, Adams filed a motion under rule 12 of the Texas Rules of Civil Procedure for counsel to show authority to represent StaxxRing. *See* TEX.R. CIV. P. 12. Adams again attached StaxxRing's bylaws to this motion. A few weeks later, Adams filed an amended motion to show authority, which included an additional copy of StaxxRing's bylaws.

The trial court heard Adams's rule–12 motion on November 6, 2009. The hearing also included Adams's motion to compel responses to certain discovery requests. On November 14, 2009, the trial court signed an order denying Adams's rule–12 motion, granting his motion to compel production of certain documents, and otherwise denying Adams's motion to compel. Within a week, Adams filed a petition for writ of mandamus and emergency motion, again attaching a copy of StaxxRing's by-laws, based on the trial court's denial of Adams's rule–12 motion. This Court denied Adams's petition for writ of mandamus on December 8, 2009. *See In re William Adams,* No. 05–09–01406–CV, 2009 WL 4601163, at *1 (Tex.App.-Dallas Dec. 8, 2009, orig. proceeding) (mem. op.).

### Adams's Motion for Continuance of Trial Setting

The year 2009 closed with Adams filing a verified motion to continue the January 11, 2010 trial setting due to an injury his counsel sustained. Langford and StaxxRing did not oppose the motion, although their counsel announced that they were ready for trial. The trial court granted Adams's requested continuance on January 5, 2010 and re-set the trial for April 5, 2010.

### Adams's Petition for Involuntary Bankruptcy of StaxxRing

After the trial court granted Adams's a continuance of the January trial setting, he, his wife, his accounting firm, and other creditors filed a petition for involuntary bankruptcy of StaxxRing. The bankruptcy petition was filed January 29, and Adams filed a suggestion of bankruptcy with the trial court on February 15. Five days later, the trial court signed an order staying proceedings as to Langford and StaxxRing but not as to Adams's third-party claims against Swift. Adams non-suited his claims against Swift shortly thereafter.

In response to the bankruptcy petition, StaxxRing filed a motion to dismiss that was heard by the bankruptcy court on April 28, 2010. A month later, the bankruptcy court dismissed the bankruptcy petition with prejudice. In the meantime, the April 5 trial setting passed.[2]

### The BA Acquisitions Lawsuit against StaxxRing and Langford

On June 17, 2010, an entity named BA Acquisitions filed suit against StaxxRing and Langford in the 116th district court in Dallas County. Testimony revealed that Adams was the sole officer, director, and shareholder of BA Acquisitions and he had created the company for the sole purpose of purchasing the StaxxRing note held by Fidelity. BA Acquisitions, represented by the same attorneys who represented Fidelity, sought payment of the note previously held by Fidelity. Langford and StaxxRing filed an answer and third-party petition against Adams and moved to transfer the lawsuit from the 116th to the 95th judicial district court where their original litigation was pending. On August 6, Adams filed a motion to compel arbitration of that dispute, and on August 12, BA Acquisitions filed a notice of non-suit. The third-party petition filed against Adams remained pending.

### Lifting the Bankruptcy Stay and Adams's Motion to Compel Arbitration

In mid-June, Langford and StaxxRing filed a motion to reopen this case and to

---

**2.** While the bankruptcy proceeded, Adams filed a state-bar grievance against Langford and StaxxRing's counsel on the same grounds alleged in his rule–12 motion to show authority.

lift the stay imposed as a result of the bankruptcy. Adams subsequently agreed to the request and the trial court signed an agreed order on July 8, 2010. A few days later, Adams began the process of changing counsel. On July 19, 2010, after discovery closed, Adams moved to compel arbitration, relying on article II, section thirteen of StaxxRing's bylaws. Adams supplemented his motion to compel arbitration on August 3, 2010; the next day, he filed a demand for arbitration with the American Arbitration Association. On August 9, 2010, the trial court reset the matter for trial for the third time: November 29, 2010.

The trial court heard Adams's motion to compel arbitration on August 10 and 11, 2010, during which documents and testimony were admitted. On August 27, 2010, the trial court heard Langford and StaxxRing's motion to compel Adams's deposition and motion for sanctions. In a single, hand-crafted order signed August 28, 2010, the trial court denied Adams's motion to compel arbitration, ordered Adams's deposition for September 28, 2010, and carried Langford and StaxxRing's motion for sanctions.

Pursuant to its August 28 order, the trial court denied Adams's motion to compel arbitration on the bases that (1) there was no agreement to arbitrate the dispute before the court, (2) Adams waived any right he may have had to arbitrate the claims in this case by substantially invoking the judicial process "to the clear detriment and prejudice of the plaintiffs," and (3) the arbitration demanded by Adams would not provide StaxxRing and Langford with "an accessible and equivalent forum for them to redress their grievances." This interlocutory appeal followed.

## DISCUSSION

In a single issue, Adams asserts that the trial court erred in denying his motion to compel arbitration, arguing: (1) the claims are within the scope of the arbitration agreement found within article II, section 13 of StaxxRing's bylaws, (2) the agreement to arbitrate is not substantively unconscionable, and (3) he has not waived his right to arbitration because he has not substantially invoked the judicial process and Langford and StaxxRing have not proven they have suffered prejudice.

We address the question of whether Adams waived his right to arbitration, because resolution of that issue is dispositive of this appeal. In doing so, we assume without deciding that the claims are subject to arbitration and the parties' agreement is not substantively unconscionable.

## Standard of Review and Applicable Law

Waiver of arbitration is a question of law that this Court reviews de novo. *Perry Homes v. Cull,* 258 S.W.3d 580, 598 (Tex.2008); *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703–04 (Tex.1998) (orig. proceeding) (per curiam). Arbitration rights are contractual, and the law includes a strong presumption against the waiver of those rights. *See Bruce Terminix,* 988 S.W.2d at 704. When presented with questions of waiver, we are required to resolve any doubts in favor of arbitration. *In re Oakwood Mobile Homes,* 987 S.W.2d 571, 574 (Tex.1999) (orig. proceeding) (per curiam), *abrogated in part on other grounds by In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex.2002) (orig. proceeding). The standard for determining waiver is the same under federal and state law. *See Holmes, Woods & Diggs v. Gentry,* 333 S.W.3d 650, 654 (Tex.App.-Dallas 2009, no pet.). Waiver may be implied from a party's conduct, so long as that conduct is unequivocal. *Perry Homes,* 258 S.W.3d at 593. In "close cases, the 'strong presump-

tion against waiver' should govern." *Id.* (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex.2006) (orig. proceeding)).

■ As the parties claiming waiver, Langford and StaxxRing had the heavy burden of establishing Adams substantially invoked the judicial process. *See Bruce Terminix*, 988 S.W.2d at 704; *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 594 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Additionally, "waiver of arbitration requires a showing of prejudice." *Perry Homes*, 258 S.W.3d at 595. In determining whether Langford and StaxxRing met their burden, we must examine the case-specific facts and look to the totality of the circumstances. *Id.* at 591.

### Analysis

■ The supreme court in *Perry Homes* emphasized what would constitute waiver: "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial." *Id.* at 590 (quoting *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex.2006) (orig. proceeding) (per curiam)). The court also recognized, as in that case where only two

of these three requirements were met, waiver "involves substantial invocation of the judicial *process*, not just judgment on the merits." *Id.* at 592. Here, the record does not fit squarely within the circumstances that clearly would constitute waiver, and we therefore must review relevant factors in the context of the totality of the circumstances. Those factors include: when Adams knew of the arbitration clause; the extent of discovery, who initiated it, whether it related to the merits rather than arbitrability or standing, and how much of it would be useful in arbitration; and, whether Adams sought judgment on the merits. *See id.* at 591–92.[3]

The record here is extensive. Although we have a reporter's record for only one of the several hearings, the clerk's record consists of over thirteen hundred pages, and the trial court took judicial notice of its file. The trial court also issued two orders discussing extensively the procedural history of the parties' dispute.[4]

### *Adams's Knowledge of Arbitration Clause and Delay*

Adams does not contest his knowledge of the arbitration clause in StaxxRing's 2005 bylaws, which were adopted by the

---

3. The court in *Perry Homes* also noted federal courts examine other factors in determining waiver, including: whether the movant was the plaintiff who elected to file in court or the defendant who merely responded, how long the movant delayed before requesting arbitration, whether the movant knew of the arbitration clause "all along," how much pretrial activity related to the merits rather than arbitrability or jurisdiction, how much time and expense was incurred in litigation, whether the movant sought or opposed arbitration previously in the case, whether the movant filed affirmative claims or dispositive motions, what discovery would be unavailable in arbitration, whether litigation activity would be duplicated in arbitration, and when the case was to be tried. *Perry Homes*, 258 S.W.3d at 590–91.

4. The extensive record here contrasts the record in our earlier case of *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639 (Tex.App.-Dallas 2010, no pet.), in which we concluded the movants had not waived their right to arbitration by invoking the judicial process to the prejudice of nonmovant. *Id.* at 649. The record in *Small* contained no reporter's record of argument before the trial court and no evidentiary hearing regarding that motion to compel arbitration. *Id.* at 645–46. The trial court in *Small* did not make findings, and the appellate record merely contained the docket sheet, pleadings, briefing on a motion for summary judgment, briefing on the motion to compel arbitration, and a notice of partial non-suit. *Id.* at 646.

same unanimous consent that elected Adams as an officer and director and issued him 100,000 shares of stock. The day after he was sued, Adams responded with a pleading citing to and quoting the same bylaws. He also attached and relied on the bylaws repeatedly as part of the relief sought by him in the litigation and as part of his mandamus proceeding when the trial court denied his rule–12 motion. Langford also testified to the uncontroverted fact that the StaxxRing bylaws have been reviewed repeatedly at the various hearings in the case. Yet Adams did not seek to invoke arbitration until after thirteen months of extensive and fast-paced litigation of a matter that had been reset for trial twice, both times at Adams's request or as a result of his conduct. *See Perry Homes*, 258 S.W.3d at 596 (waiver found when party delayed fourteen months after filing suit); *see also In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 481–82 (Tex.App.-Corpus Christi 2007, orig. proceeding) (finding waiver after fourteen months of litigation and resetting matter for trial three times).

### Discovery

■ Relevant discovery factors in determining whether a movant has substantially invoked the judicial process include how much discovery has been conducted and who initiated it, whether the discovery related to the merits rather than arbitrability or standing, and how much of the discovery would be useful in arbitration. *Holmes*, 333 S.W.3d at 654 (citing *Perry Homes*, 258 S.W.3d at 591–92). "How much litigation conduct will be 'substantial' depends very much on the context; three or four depositions may be all the discovery needed in one case, but purely preliminary in another." *Perry Homes*, 258 S.W.3d at 593.

Adams not only initiated, but expedited discovery while avoiding discovery directed to him. He served almost two hundred merits-related requests—none going to issues of standing or arbitrability—and nothing in the record suggests he responded to any discovery. *See Holmes*, 333 S.W.3d at 655 ("Although the discovery may not have involved the merits per se, it did not involve arbitrability or standing."). He also sought and obtained orders from the court compelling discovery he was requesting, cross-examined Langford during at least three evidentiary hearings, and used that evidence as part of his requests for additional relief.

While initiating and conducting his own discovery, Adams filed repeated motions for protection and moved to compel arbitration only after the discovery deadline had passed. It would appear discovery was substantially completed. *See Perry Homes*, 258 S.W.3d at 596 ("[T]he record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here."). Adams argues that all of the discovery would be useful in the arbitration. This is but a factor to be considered. *See Citizens Nat'l Bank v. Bryce*, 271 S.W.3d 347, 358 (Tex.App.-Tyler 2008, orig. proceeding) (citing *Perry Homes*, 258 S.W.3d at 591–92). What, if any, remedies would be available in arbitration as to the discovery resisted by Adams in the trial court is unknown. *See Perry Homes*, 258 S.W.3d at 599.

### Merits Activity

As to merits activity conducted by Adams, he sought a temporary restraining order and temporary injunctive relief on

the merits immediately after suit was filed and well before any answer would have been due. He participated fully in the related hearings, and the trial court specifically found as part of its order granting Adams injunctive relief that he was "likely to prevail on the merits" of at least one of his claims. Not only did Adams later seek to modify or clarify the injunction, but he also asked the trial court to find Langford in contempt for allegedly violating the injunction in Adams's favor. Even if Adams's merits activity alone is insufficient to waive any right he had to arbitrate his claims, this is an additional factor we consider. *See Perry Homes*, 258 S.W.3d at 591–92.

### Other Factors

Other factors implicated by Adams's actions are relevant to our inquiry. Not only did Adams embrace the judicial process the day after suit was filed by filing an answer, affirmative defenses, and counterclaims, but he also brought in third parties. The trial date was reset repeatedly either at the request of Adams or as a direct result of his conduct. Months after the case was filed and Adams had engaged in discovery, filed motions to compel and to show authority, pursued and obtained injunctive relief, and had filed his second amended answer and counterclaim, he paid a jury fee. By the time Adams filed his motion to compel arbitration, the clerk's record included over eight hundred pages of pleadings, motions, and other documentation. The trial court took judicial notice of its "ample file" and noted that "the majority of the file was generated by Adams'[s] own vigorous litigation of this case."

In addition, Adams filed a rule–12 motion and sought mandamus appellate review when the trial court denied him relief. Although the rule–12 motion and Adams's immediate detour to the appellate court did not implicate the merits of the underlying dispute, the journey delayed and frustrated the trial court's ability to resolve the case and increased the litigation costs for the parties. Importantly, Adams's use of mandamus appellate review is activity otherwise not available in arbitration.

Adams also invoked the judicial process through independent proceedings: the involuntary bankruptcy petition and BA Acquisition's suit against Langford and StaxxRing in the 116th district court. Although we normally would not consider litigation activity in other forums as evidencing waiver, Adams's other lawsuits support the conclusion he was willing to engage in all methods of litigation activity inconsistent with the right to arbitrate as part of his strategy against Langford and StaxxRing. *See Christus Spohn*, 231 S.W.3d at 481 ("While we ordinarily would not consider actions in a separate cause as indicative of waiver, ... we construe [movant's] actions in this separate lawsuit as part of its strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate."); *cf. Haddock v. Quinn*, 287 S.W.3d 158, 180 (Tex. App.-Fort Worth 2009, pet. denied) ("Moreover, participation in litigation to gain an advantage in future litigation can result in waiver.").

We conclude, considering the totality of the circumstances, Adams substantially invoked the judicial process. By arguing Langford and StaxxRing failed to meet their difficult burden of showing his individual actions were sufficient to constitute waiver, Adams ignores the requirement that we examine all circumstances in determining whether he exhibited an intent to avail himself of the judicial process. *See Perry Homes*, 258 S.W.3d at 591; *see also Nw. Constr. Co. v. Oak Partners, L.P.*, 248 S.W.3d 837, 849 (Tex.App.-Fort

Worth 2008, pet. denied) ("Northwest focuses on its various activities in the suit in isolation; however, when viewed together, all of Northwest's actions in the suit indicate an intention to avail itself of the judicial process."). At the time Adams invoked the arbitration clause contained in the StaxxRing bylaws he had cited, quoted, and relied on early and often, discovery was closed. All that appeared to remain in the case were court-ordered depositions, including his, and trial of the case. The trial court did not err in finding Adams had substantially invoked the judicial process. *See Christus Spohn*, 231 S.W.3d at 479 (noting actions inconsistent with right to arbitrate include some combination of filing answer and counterclaim, conducting extensive discovery, moving for continuance, and failing to timely request arbitration); *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 40 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (finding circumstances reflected concerted effort seven months into simple defense strategy of denying sworn account, to escalate process by multiple sworn and affirmative defenses, claims of failures of conditions precedent, and affirmative claims for relief, including declaratory relief, attorney's fees, and sanctions).

#### Prejudice

In determining whether Adams's substantial invocation of the judicial process constitutes a waiver of his arbitration rights, we also must determine whether StaxxRing and Langford showed prejudice. *Perry Homes*, 258 S.W.3d at 595. In this context, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." *Id.* at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir.2004)). Prejudice is more easily shown when a party delays his request for arbitration and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate. *Id.* at 600 (quoting *PAICO*, 383 F.3d at 346).

Here, Langford and StaxxRing presented sufficient evidence of prejudice resulting from Adams's failure to invoke his arbitration rights for thirteen months. They showed that over 5,000 pages of documents were produced in response to Adams's discovery requests while they continued unsuccessfully to obtain discovery from Adams. The trial court had ordered Adams's deposition at the same time it denied Adams's motion to compel arbitration; Adams then filed this interlocutory appeal and obtained a stay of the trial court proceedings. Langford and StaxxRing also incurred approximately $21,000 in legal fees solely for the purpose of responding to Adams's discovery requests and motions and $35,000 in legal fees in addressing Adams's rule–12 motion and appeal. As of the date of the hearing on Adams's motion to compel arbitration, Langford and StaxxRing had incurred $110,000 in legal fees in this matter alone. Langford also testified that, in responding to discovery requests, she lost "hundreds of hours" of income-producing activity and needed to hire an accounting person to assist StaxxRing with production. *See Christus Spohn*, 231 S.W.3d at 482 (considering personal prejudice suffered by party as result of delay). StaxxRing also spent over $20,000 to handle the involuntary bankruptcy proceeding.[5]

---

**5.** Adams argues that any costs Langford and StaxxRing incurred as a result of the bankruptcy filing should not be considered, citing

an agreed order in that suit for payment by Adams of $16,500 to resolve relief sought by StaxxRing. The referenced order, however, is

In addition, when Adams filed his motion to compel arbitration, discovery was closed with the exception of court-ordered depositions. Thus, after Adams had obtained thousands of pages of documents from Langford and StaxxRing under the rules of civil procedure, he sought to apply the arbitration rules to any further proceedings. *See Okorafor*, 295 S.W.3d at 40 ("Armed with discovery provided by Uncle Sam and facing a looming deadline to produce discovery requested by Uncle Sam, the Okorafors tried to have it both ways and moved to compel arbitration. Having substantially invoked the litigation process, the Okorafors abruptly attempted to arrest it to gain the advantage of avoiding reciprocal discovery.") (internal citations omitted).

Adams argues that in order to show prejudice from pretrial discovery, Langford and StaxxRing must show that discovery would not be useful in arbitration and any costs would not have been incurred in arbitration. The authority cited by Adams precedes *Perry Homes*, in which the court stated such considerations were factors to consider but were not dispositive on the issue of waiver. *Perry Homes*, 258 S.W.3d at 591–92. The majority in *Perry Homes* emphasized in response to a dissenting argument that there would be no prejudice "from extensive discovery without proof that an arbitration would have prohibited it":

> That again is impossible; arbitrators have almost unbridled discretion regarding discovery, so no one can predict what they might do in advance. Presuming (as the dissents do) that broad discovery is generally available in arbi-

tration simply ignores one of its most distinctive features.

*Id.* at 599. That Langford and StaxxRing did not prove the discovery incurred during litigation (and the attendant costs) would not have occurred in arbitration, does not negate a conclusion they were prejudiced by Adams's failure to timely invoke the arbitration clause while simultaneously actively obtaining discovery under the rules of civil procedure. *See Bryce*, 271 S.W.3d at 357–58; *see also Perry Homes*, 258 S.W.3d at 599 ("This confuses proof of the *fact* of prejudice with proof its *extent*; the Defendants had to show substantial invocation that prejudiced them, not precisely how much it all was.").

In addition to this record evidencing costs involved, the status of discovery, and the status of the litigation, Langford and StaxxRing also presented their attorney's affidavit, in which he described the effect Adams's litigation activities had on his clients' legal positions:

> Perhaps more significant to the issue of prejudice than attorneys' fees themselves is the fact that Adams forced Plaintiffs to marshal their evidence, thought process, and legal analysis of its attorneys in responding to Adams'[s] Mandamus, Emergency Appeal, Motion to Show Authority, Temporary Injunction, Motion to Clarify/Modify and reconsider, and the other pleadings and discovery Adams conducted in this case that he would not have been able to in arbitration.

Evidence of compromise to Langford's and StaxxRing's legal positions is another factor relevant to our consideration in determining prejudice. *See Perry Homes*, 258

not part of the appellate record, but is instead attached as an appendix to Adams's opening brief on appeal. Even if we were to take judicial notice of the order, it does not negate StaxxRing and Langford's showing of preju-

dice. The settlement amount is less than the amount Langford's testimony shows was expended as legal fees and the settlement does not address the months of delay due to the bankruptcy stay.

S.W.3d at 597. Much of their briefing and the evidence they presented required Langford and StaxxRing to address the merits of the dispute with Adams and to marshal their legal strategy in defense of Adams's aggressive litigation activities.

Reviewing the record before us, we agree Langford and StaxxRing presented sufficient evidence of prejudice to support the trial court's findings. This record is not unlike that described by the supreme court in its *Perry Homes* decision:

> [Movants] got extensive discovery under one set of rules and then sought to arbitrate the case under another. They delayed disposition by switching to arbitration when trial was imminent and arbitration was not. They got the court to order discovery for them and then limited their opponents' rights to appellate review. Such manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law.

*Perry Homes,* 258 S.W.3d at 597. Similarly, Langford and StaxxRing were prejudiced by Adams's strategic attempt to switch to arbitration and a different set of rules after thirteen months of aggressive litigation in which he got extensive discovery, took full advantage of the rules of procedure and appellate remedies, and repeatedly avoided both a trial date and his own deposition.

### Conclusion

Because Adams substantially invoked the judicial process to the detriment and prejudice of Langford and StaxxRing, we conclude Adams waived any arbitration rights under the StaxxRing bylaws. We affirm the trial court's order denying Adams's motion to compel arbitration.