**Opinion issued December 7, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00314-CV

————————————

### GRGP, INC. AND ROSALIND NG, Appellants

### V.

### BLACK FOREST HOLDINGS, INC., 5711 BISSONNET, LP, 5713 BISSONET, LP, AND AVI RON, Appellees

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-78562**

---

## MEMORANDUM OPINION

Appellants GRGP, Inc. and Rosalind Ng (collectively, GRGP) appeal from the trial court's order denying their motion to compel arbitration in the suit filed against them by appellees Black Forest Holdings, Inc., 5711 Bissonnet, LP, 5713 Bissonnet, LP, and Avi Ron (collectively, Black Forest). In two issues, GRGP

contends that the trial court erred in failing to (1) compel arbitration because Black Forest did not show that GRGP's conduct was inconsistent with the right to compel arbitration or that it prejudiced Black Forest as required to find waiver, and (2) allow GRGP to take back their purported waiver. We affirm.

## Background

GRGP and Black Forest Holdings are the General Partners of two limited partnerships: 5711 Bissonnet, LP and 5713 Bissonnet, LP (the Partnerships). GRGP and Black Forest formed the Partnerships as property management entities for the purpose of purchasing, renting, and selling real property in and around Harris County, Texas.

GRGP and Black Forest each have a 0.5% interest in the Partnerships. Avi Ron, Black Forest's President, and Rosalind Ng, GRGP's President, also own an interest as limited partners.

In November 2017, Black Forest sued GRGP, Ng, and Joshua Wohlstein, Ng's husband,[1] asserting claims for breach of contract, breach of fiduciary duty, conspiracy, and aiding and abetting. Black Forest alleged that GRGP denied it access to the corporate books and records, despite repeated requests, and excluded Ron from business operations and decision making, in violation of the terms of the

---

[1]    Wolstein is not a party to this appeal.

2

Limited Partnership Agreements (the Agreements). Black Forest sought a temporary injunction barring GRGP from managing or conducting business on behalf of the Partnerships and appointment of a receiver.[2]

GRGP answered asserting a general denial and several affirmative defenses. It further asserted that it was entitled to indemnification pursuant to the terms of the Agreements. GRGP amended its answer.

In July 2018, GRGP filed a pleading entitled "Plea to the Jurisdiction and Motion for Summary Judgment" challenging (1) the trial court's subject matter jurisdiction, (2) Ron's standing to bring claims relating to the Partnerships, and (3) Black Forest's standing to bring claims on behalf of the Partnerships. Black Forest filed a response and motion for continuance.

In October 2018, GRGP counterclaimed asserting that Black Forest breached the Agreements, and it sought damages, declaratory relief, and enforcement of the Agreements' indemnity provisions. GRGP amended its counterclaims and filed its third amended answer to Black Forest's first amended petition.

---

[2]    In 2012, GRGP sued Black Forest asserting claims for breach of fiduciary duty and breach of contract and sought an accounting, specific performance, and declaratory relief. GRGP alleged that Black Forest unilaterally entered into contracts for property management services with two companies owned by Ron in violation of the terms of the partnership agreements. After the parties entered a Rule 11 agreement to settle the case, they jointly moved to dismiss the lawsuit in March 2013.

In January 2020, GRGP filed a second motion for summary judgment on Black Forest's breach of contract claim. It argued that the parties had entered into an agreement under which Black Forest had expressly delegated its general partner authority to GRGP, and that GRGP thereafter moved to dissolve the receivership. Black Forest responded that it had withdrawn its consent to GRGP's control two years earlier, and it requested sanctions on the grounds that GRGP had moved for summary judgment on a delegation of authority it knew had been previously revoked.

In March 2021, Ng moved for final summary judgment on Black Forest's claims against her for breach of fiduciary duty, conspiracy, and declaratory relief. Black Forest responded and moved for a continuance so that it could depose Ng. The trial court granted a continuance.

In April 2022, the trial court conducted an evidentiary hearing on Black Forest's renewed and supplemental motion for finding of spoliation and sanctions against GRGP. Following the hearing, the trial court entered an order and findings that GRGP had intentionally spoliated evidence by destroying a computer server containing evidence relevant to key issues in the case. The trial court ordered GRGP to pay Black Forest's reasonable and necessary attorney's fees and costs incurred as a result of the spoliation, the receiver's fees and costs, and the fees charged by the receiver's accountant. The trial court reserved ruling on a spoliation presumption

and instruction until trial. The trial court later awarded $61,806.25 in attorney's fees to Ron as well as the fees incurred by the receiver and the receiver's accountant that were paid by the Partnerships.

In January 2023, GRGP filed an opposed motion to compel arbitration asserting that the parties had agreed that any disputes arising out of or relating to the Agreements would be resolved through binding arbitration.[3] Black Forest responded arguing that GRGP had waived the right to arbitration, and it filed a cross-motion for sanctions. The trial court denied GRGP's motion to compel arbitration on April 17, 2023. This interlocutory appeal followed.

## Standard of Review and Applicable Law

We review an order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts

---

[3]    Section 15.9(a) of the Agreements provides:

> All disputes, differences or questions arising out of or relating to this Agreement (including, without limitation, those as to the validity, interpretation, breach, violation or termination hereof ) will, at the written request of any partner, be finally determined and settled pursuant to arbitration at Houston, Texas by three arbitrators, one arbitrator to be appointed by the partner requesting arbitration, one arbitrator to be appointed by the adverse party, and a neutral arbitrator to be appointed by the first two arbitrators. The neutral arbitrator will be an attorney and will act as chairman. Any such arbitration may be initiated by any partner by written notice ("Arbitration Notice") to the other party specifying the subject of the requested arbitration and appointing such partner's arbitrator for such arbitration.

without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115.

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the claims in dispute fall within the scope of the agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134–35 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (quoting *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999))).

**Waiver**

A party who opposes the enforcement of a valid arbitration agreement[4] based on the defense of waiver bears the burden of proving the defense. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015); *Pounds*

---

[4] Black Forest does not challenge on appeal the existence of a valid arbitration agreement or assert that its claims against GRGP do not fall within its scope.

6

*v. Rohe*, 592 S.W.3d 549, 554 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Because the law favors arbitration, this burden is a heavy one. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015); *Pounds*, 592 S.W.3d at 554. A party may waive its right to arbitration either expressly or impliedly. *G.T. Leach*, 458 S.W.3d at 511. Waiver of arbitration may be implied from a party's conduct, so long as the conduct is unequivocal. *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 647 (Tex. App.—Dallas 2011, pet. denied)).

When, as here, implied waiver is at issue, the party seeking to establish the waiver defense must show that (1) the party seeking arbitration substantially invoked the judicial process in a manner inconsistent with the right to compel arbitration and (2) this inconsistent conduct caused the nonmoving party to suffer detriment or prejudice. *G.T. Leach*, 458 S.W.3d at 511–12 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94 (Tex. 2008)). Whether a party waives its right to arbitration by substantially invoking the judicial process depends on the totality of the circumstances. *See id.* at 512; *Perry Homes*, 258 S.W.3d at 590. We decide the issue on a case-by-case basis taking into consideration a multitude of non-exclusive factors, including:

- how long the movant waited before moving to compel arbitration;

7

- the reasons for the movant's delay;

- whether and when, during the period of delay, the movant knew of the arbitration agreement;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the discovery would be unavailable or useful in arbitration;

- whether the movant asked the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (rather than to arbitrability or jurisdiction);

- the time and expense the parties committed to the litigation;

- whether activity in court would be duplicated in arbitration; and

- when the case is set to be tried.

*G.T. Leach*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 590–92). In general, no single factor is dispositive. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). Nor must all or most of these factors be present to support waiver. *See Perry Homes*, 258 S.W.3d at 591. Courts look to the specifics of each case. *Henry*, 551 S.W.3d at 116.

The party asserting waiver of arbitration must also prove that it suffered unfair prejudice because of the opposing party's litigation conduct. *See G.T. Leach*, 458 S.W.3d at 515. Such inherent unfairness may be manifested "in terms of delay,

expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597 (quotation omitted). "Detriment or prejudice, in this context, refers to an 'inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *G.T. Leach*, 458 S.W.3d at 515 (quoting *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (per curiam)) (internal quotation omitted); *see Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam). "[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *Perry Homes*, 258 S.W.3d at 597 (quoting *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 n.5 (1st Cir. 2005)). The nonmovant must show the fact of prejudice, but not its extent. *Id.* at 599.

## Discussion

In its first issue, GRGP contends that the trial court erred in failing to compel arbitration because Black Forest did not show that GRGP's conduct was inconsistent with the right to compel arbitration, or that its conduct prejudiced Black Forest. Black Forest responds that GRGP substantially invoked the judicial process in a manner inconsistent with the right to compel arbitration by (1) litigating for five and a half years without seeking arbitration; (2) filing counterclaims and defenses based

on the Agreements; (3) filing three motions for summary judgment; (4) completing the entire discovery process; and (5) moving to compel arbitration only after the trial court found it had intentionally spoliated evidence. Black Forest argues that it would be prejudiced if forced to arbitrate.

## A. Substantial Invocation of Judicial Process

In examining whether GRGP substantially invoked the judicial process in a manner inconsistent with the right to arbitrate, we consider the factors enunciated in *G.T. Leach*.

### 1. Delay

Black Forest filed suit against GRGP on November 22, 2017, and GRGP did not move to compel arbitration until February 28, 2023—more than five years after suit was filed. Courts have found waiver based on significantly shorter periods of delay. *See, e.g., Perry Homes*, 258 S.W.3d at 596 (finding waiver where party delayed request for arbitration fourteen months after filing suit); *Menger v. Menger*, No. 01-19-00921-CV, 2021 WL 2654137, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (finding party's six-month delay before requesting arbitration supported finding of waiver).

While delay, standing alone, does not constitute substantial invocation of the judicial process, *see G.T. Leach*, 458 S.W.3d at 515, the record shows more than mere delay in this case. GRGP has offered no explanation for the delay. Nor does

the record suggest a justifiable reason for the decision to wait so long to seek arbitration. GRGP was aware of the Agreements' arbitration clause from the outset as it was a party to the Agreements, and the Agreements have been cited in, and attached as exhibits to, numerous pleadings and filings, including GRGP's own counterclaims and summary judgment motions. However, rather than pursuing arbitration, GRGP chose to file defenses and counterclaims and engage in significant discovery and motion practice for more than five years, after all pretrial deadlines had expired and the trial court found intentional spoliation, before seeking to compel arbitration. *See BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at \*6 (Tex. App.—Beaumont Nov. 16, 2017, no pet.) (mem. op.) ("[A] party who is aware of an arbitration clause, yet only files a motion to compel arbitration after having engaged in discovery and filed pleadings with the trial court, and after having received an adverse ruling from a trial court, has substantially invoked the litigation process and thereby waived its right to arbitrate."); *Prof'l Advantage Software Sols., Inc. v. W. Gulf Mar. Ass'n*, No. 01-15-01006-CV, 2016 WL 2586690, at \*4 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) (noting party is presumed to know contents of agreement it signs).

We find GRGP's delay in moving to compel arbitration supports a finding of waiver.

11

## 2. Discovery

The record shows that GRGP served forty-two requests for production, thirty-nine requests for admission, fourteen interrogatories, and two deposition notices with subpoena duces tecum to third parties. GRGP conducted this discovery before the end of the discovery period on September 18, 2020 and well before it moved for arbitration on February 28, 2023. *See Perry Homes*, 258 S.W.3d at 596 ("[T]he record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here."); *Adams*, 344 S.W.3d at 649 (concluding that discovery was substantially completed where defendant initiated and conducted discovery, filed repeated motions for protection, and moved to compel arbitration only after discovery deadline had passed).

We find GRGP's discovery supports a finding of waiver.

## 3. Affirmative Relief and Pretrial Matters

The record reflects that GRGP sought affirmative relief against Black Forest in the trial court. It asserted amended counterclaims based on the Agreements and sought numerous declaratory judgments regarding the parties' rights and obligations under them, including enforcement of the Agreements' indemnity provisions. *See Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 785–86, 790–91 (Tex.

App.—El Paso 2015, no pet.) (concluding evidence showing party sought affirmative relief by filing claim for declaratory judgment and seeking constructive trust on disputed monies was significant factor in determining whether defendant had substantially invoked judicial process). GRGP also filed three motions for summary judgment during the course of the litigation. In July 2018, GRGP filed a pleading entitled "Plea to the Jurisdiction and Motion for Summary Judgment" challenging the trial court's subject matter jurisdiction, Ron's standing to bring claims relating to the Partnerships, and Black Forest's standing to bring claims on behalf of the Partnerships. In January 2020, GRGP moved for summary judgment on Black Forest's breach of contract claim and, in March 2021, Ng moved for final summary judgment on Black Forest's claims against her for breach of fiduciary duty, conspiracy, and declaratory relief. The fact that the trial court did not rule on the summary judgment motions is not dispositive. *See Perry Homes*, 258 S.W.3d at 592 ("Waiver involves substantial invocation of the judicial *process*, not just judgment on the merits."); *see also Hogg*, 480 S.W.3d at 790 ("Contrary to Ms. Hogg's argument, we do not believe it is necessary for a trial court to have entered a final judgment against the moving party before a waiver will be found.").

GRGP also participated in pretrial matters related to the merits of their claims. As discussed above, GRGP filed numerous pleadings—original and amended answers, original and amended counterclaims, and three summary judgment

13

motions—as well as participated in evidentiary hearings and conducted significant discovery.

We further note that GRGP did not move to compel arbitration until after the trial court entered rulings adverse to GRGP. On July 26, 2022, the trial court entered an order and findings that GRGP had intentionally spoliated evidence by destroying a computer server containing evidence relevant to key issues in the case. The trial court reserved ruling on a spoliation presumption and instruction until trial, leaving open the possibility of further adverse rulings. The trial court later awarded $61,806.25 in attorney's fees to Ron as well as the fees and costs incurred by the receiver and the receiver's accountant that were paid by the Partnerships as a result of the spoliation. *See Courtright*, 647 S.W.3d at 521 (concluding that evidence showing defendants did not move to compel arbitration until after trial court entered rulings adverse to them, including granting motion for partial summary judgment in favor of plaintiffs, and five months before the parties' agreed trial setting supported finding of waiver); *Haddock v. Quinn*, 287 S.W.3d 158, 180 (Tex. App.—Fort Worth 2009, pet. denied) ("Indeed, failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver.").

The record thus demonstrates that GRGP sought affirmative relief and participated in pretrial matters, supporting a finding of waiver.

### 4. Time and Money Spent in Litigation

In support of its response to GRGP's motion to compel arbitration, Black Forest attached the affidavit of its counsel, Andrew K. Meade. Meade attested that his firm had spent a total of 873.10 hours working on the matter and that Black Forest had incurred $279,613.00 in fees to date. *See Adams*, 344 S.W.3d at 651 (considering evidence showing that plaintiffs had incurred $110,000 in legal fees, which included $21,000 in fees solely for purpose of responding to defendant's discovery requests and motions, in determining that defendant had waived his right to compel arbitration). This evidence supports a finding of waiver.

### 5. Duplication of Litigation Activity and Trial Setting

We also consider whether the activity in court would be duplicated in arbitration and whether and when the case had been set for trial. *See G.T. Leach*, 458 S.W.3d at 512. Here, all pretrial deadlines had passed by the time GRGP moved to compel arbitration. Therefore, any activity in an arbitration proceeding would necessarily be duplicative of the activity that was previously conducted in litigation. Following a continuance in January 2023, trial of the case was set for October 16, 2023, after more than five years of active litigation. The trial court did not issue a new docket control order, and, as noted above, all discovery and dispositive motion

deadlines had passed. *See Adams*, 344 S.W.3d at 649 (noting that defendant moved to compel arbitration only after discovery deadline had passed and most discovery had been completed in finding waiver of right to compel arbitration) (citing *Perry Homes*, 258 S.W.3d at 596 ("[T]he record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here.")).

After considering the totality of the circumstances, we conclude that GRGP substantially invoked the judicial process in a manner inconsistent with the right to arbitrate and waived arbitration. *See Hogg*, 480 S.W.3d at 790 (holding arbitration waived when party participated in litigation "only up until the point that she received an adverse ruling from the district court and was faced with the possibility of having the court impose case-crippling sanctions"); *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (concluding defendant substantially invoked judicial process because she pursued aggressive litigation strategy through amended pleadings that sought affirmative relief and abruptly switched to arbitration strategy when facing looming deadline to respond to discovery requests*); In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 479 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding) (explaining that

actions inconsistent with right to arbitrate may include "some combination of filing an answer, setting up a counterclaim, pursuing extensive discovery, moving for a continuance, and failing to timely request arbitration").

## B.     Prejudice

Having determined that GRGP substantially invoked the judicial process, we next consider whether Black Forest established that it was unfairly prejudiced as a result of GRGP's conduct.[5] *See G.T. Leach Builders*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 595. "Detriment or prejudice, in this context, refers to an 'inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *G.T. Leach*, 458 S.W.3d at 515 (quoting *In re Citigroup Global Mkts.*, 258 S.W.3d at 625); *Kennedy Hodges*, 433 S.W.3d at 545. Such inherent unfairness may be manifested "in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597.

---

[5]     The United States Supreme Court recently rejected any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule in cases brought in federal court. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–19 (2022). Regardless of whether that ruling governs our analysis here, *see Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 n.5 (Tex. App.—Houston [14th Dist.] Jun. 27, 2023, pet. filed) (describing issue as "unsettled" question), we nevertheless determine that Black Forest suffered prejudice as a result of GRGP's conduct, as set forth below.

As discussed above, Black Forest presented evidence that it had incurred $279,613.00 in attorney's fees in the course of the litigation by the time GRGP moved to compel arbitration. *See Christus Spohn*, 231 S.W.3d at 482 (concluding party had made clear showing of prejudice where, among other things, counsel testified by affidavit that client had incurred $60,000 to $70,000 in expenses to develop matter for trial and more than $350,000 in attorney's fees). In addition to the added expense that litigation imposed on Black Forest, the record also shows prejudice to Black Forest because GRGP actively participated in litigation, suffered an adverse ruling when the trial court found it intentionally spoliated evidence, and is now seeking to switch to a new tribunal presumably in an attempt to undo the effects of the adverse ruling. As this Court noted in *Pounds v. Rohe*, 592 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2019, no pet.), prejudice is shown when a party attempts to have it both ways by switching between litigation and arbitration after the results of the litigation prove unsatisfactory.

> When a movant already has unsuccessfully sought a resolution on the merits, prejudice inheres in an attempt to start over in a different forum before a new decisionmaker. Pounds and Black are engaged in a type of unfair forum-shopping that, if condoned, would allow them to have it both ways—litigating on the merits first and then insisting on arbitration after the results of the litigation proved unsatisfactory. Compelling arbitration at this point in the proceedings would allow Pounds and Black to undo the trial court's adverse summary-judgment ruling and deprive Rohe of this favorable result. Damage to a party's legal position of this sort suffices to show detriment or prejudice in the context of waiver of the right to arbitrate.

*Id.* at 558.

In sum, GRGP moved for arbitration more than five years after Black Forest filed suit, after GRGP engaged in extensive discovery and motion practice, and after the trial court entered an adverse ruling that GRGP intentionally spoliated evidence, awarded attorney's fees and costs to Black Forest incurred as a result of the spoliation, and explicitly reserved ruling on a spoliation presumption and instruction until trial. *See Courtright*, 647 S.W.3d at 524 (finding defendants' conduct resulted in substantial prejudice to plaintiffs and therefore supported finding of waiver where record showed trial court granted plaintiffs' motion for partial summary judgment, entered adverse finding that one defendant's actions were "illegal, oppressive, or fraudulent," and one plaintiff's motion for partial summary judgment remained pending). Reviewing the record before us, we conclude that GRGP's conduct resulted in substantial prejudice to Black Forest. *See Kennedy Hodges*, 433 S.W.3d at 545 (stating prejudice is "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue"). The trial court did not abuse its discretion in denying GRGP's motion to compel arbitration. We overrule GRGP's first issue.

## C.    "Take Back" of Waiver

In its second issue, GRGP contends that even if the evidence supports a finding of waiver, the trial court erred in not following the Texas Supreme Court's guidance in *Perry Homes* by allowing it to "take back" any waiver. This is so, it argues, because it moved to compel arbitration nearly nine months before trial. GRGP's argument is unavailing.

In *Perry Homes*, the Texas Supreme Court addressed the defendants' argument that it should reconsider requiring a showing of prejudice to find waiver by litigation conduct and instead apply the ordinary waiver rules governing contracts which require only "intentional relinquishment of a known right" without a requirement of prejudice. *See Perry Homes*, 258 S.W.3d at 594. After noting that its own precedent and that of a majority of federal circuits courts requiring a showing of prejudice, the Court declined the defendants' invitation to reconsider the requirement. *See id.* Instead, it held that it would continue to require a showing of prejudice because waiver in the arbitration context is analogous to estoppel:

> Under Texas law, waiver may not include a prejudice requirement, but estoppel does. In cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back. As noted above, Texas estoppel law does not allow a party to withdraw a representation once the other party takes "action or forbearance of a definite and substantial character." Using precisely the same terms, the Restatement does not allow a party to withdraw an option contract when the offeree has taken substantial action based upon it. In these contexts, prejudice is an element of the normal contract rules.

20

> Thus, we agree with the courts below that waiver of arbitration requires
> a showing of prejudice.

*Id.* at 595. The "take it back" language upon which GRGP relies is not a rule allowing a party to undo a completed waiver. Rather, it is an explanation as to why arbitration waiver includes a prejudice requirement. Because the trial court did not err in not permitting GRGP to take back its waiver, we overrule GRGP's second issue.

## Conclusion

We affirm the trial court's order denying GRGP's motion to compel arbitration.

Amparo Monique Guerra
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.