COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| IN RE: READYONE INDUSTRIES, INC. AND AMALIA LOPEZ, | § | No. 08-08-00221-CV |
| Relators. | § | AN ORIGINAL PROCEEDING |
| | § | IN MANDAMUS |
| | § | |
| | § | |

## OPINION ON PETITION FOR WRIT OF MANDAMUS

In this original proceeding, Relators ReadyOne Industries, Inc. and Amalia Lopez seek a writ of mandamus from the trial court's order denying its motion to compel arbitration. We conditionally grant mandamus relief and request that the trial court compel arbitration.

Maria Torres, the plaintiff in the underlying suit and the Real Party in Interest (Torres/Real Party), contends she suffered a shoulder injury while working for Relators. She sued Relators for their negligence in failing to maintain a safe working place. Relators moved to compel arbitration on October 1, 2007. On March 10, 2008, the district court denied Relators' motion to compel. Relators filed a motion to reconsider compelling arbitration on April 30, 2008, which was also denied.

## STATEMENT OF FACTS

On February 23, 2005, Torres signed an arbitration agreement (Agreement) with her employer, the National Center for Employment of the Disabled (NCED). This Agreement requires that both Torres and her employer arbitrate "[a]ny injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to,

claims for negligence, gross negligence, and all claims for personal injuries . . . ."

In NCED's Restated Certificate of Formation with New Amendments, it simultaneously adopted the Texas Business Organizations Code and changed its name to ReadyOne Industries, Inc. (formerly National Center for Employment of the Disabled). Along with this name change, ReadyOne Industries, Inc. (ReadyOne) also amended Articles 1-7 and added Articles 8-9 to its certificate of formation. Specifically, the following changes were made: (i) change the filing entity's name; (ii) update the registered agent and office; (iii) update the provisions regarding the board of directors; (iv) provide that the filing entity has no members; (v) restate the filing entity's purposes; (vi) restate the method of asset distribution upon the dissolution of the filing entity; (vii) restate the prohibitions on certain activities; (viii) provide for limitation of the liability of the directors and officers of the filing entity under certain circumstances; (ix) eliminate the express period of duration of the filing entity; and (x) eliminate the name and address of the organizer.

Torres claims that on January 24, 2007, while working for Relators, she sustained an on-the-job injury to her shoulder. She sued the Relators for negligence for failing to furnish a safe workplace and for failing to comply with OSHA safety standards. In the Relators' timely answer, and before taking other action in the suit, they specifically asserted that a valid and binding arbitration agreement was in existence and thus was controlling in the suit. Relators moved to compel arbitration on October 1, 2007. On March 10, 2008, the district court denied Relators' motion to compel. Relators filed a motion to reconsider compelling arbitration on April 30, 2008. And while not in the record, it appears, based on the briefs of the Relators and the Real Party, this motion to compel was also denied. On June 18, 2008, Relators filed their Petition for Writ of Mandamus, seeking this Court's review of the trial court's order denying

their request to submit to binding arbitration.

## STANDARD OF REVIEW

A writ of mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005). The relator has the burden to establish that the trial court abused its discretion. *See id*. Specifically, in evaluating a motion to compel arbitration, the reviewing court must first determine whether a valid arbitration agreement exists between the parties, applying ordinary principles of state contract law. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). The court must then determine whether the agreement encompasses the claims raised in the motion. *Id*. If a trial court erroneously denies a party's motion to compel arbitration under the Federal Arbitration Act (FAA), the movant has no adequate remedy at law and is entitled to a writ of mandamus. *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005); *Service Corp. Int'l v. Lopez (In re Serv. Corp.)*, 162 S.W.3d 801, 808 (Tex.App.–Corpus Christi 2005, no pet.) (consolidated appeal and original proceeding).

A party seeking to compel arbitration by a writ of mandamus must establish the existence of a valid agreement to arbitrate under the FAA and show that the claims in dispute are within the scope of the agreement. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (per curiam); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).

In determining the validity of agreements to arbitrate, which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor*

*Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995)).  Whether a valid arbitration agreement exists is a legal question subject to *de novo* review.  *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781.  If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

We first consider whether Relators have established  that the Federal Arbitration Act (FAA) applies.  In its motion to compel arbitration and in its Petition for Writ of Mandamus, Relators asserted that the Agreement is governed by the FAA.  The FAA applies to all suits in state or federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding).  "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex.App.–El Paso 1998, orig. proceeding).  The FAA does not require a substantial effect on interstate commerce; it only requires that commerce be involved or affected. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex.1999) (orig. proceeding).  Also important, if the parties expressly choose for their arbitration agreement to be governed by the FAA, the agreement should be enforced regardless of the parties nexus to interstate commerce. *In re Kellogg Brown & Root*,  80 S.W.3d 611, 617 (Tex.App.–Houston [1st Dist.] 2002, orig. proceeding); *see also In Re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex.App.–Houston [14th Dist.] 2006, orig. proceeding) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA.").

Relying on *In Re Jim Walter Homes* and *In re Kellogg Brown & Root*, it is unnecessary

for this Court to examine whether the parties before this Court were involved in interstate commerce. The express language in the agreement controls. In the February 23, 2005, Agreement, the parties agreed that "[t]he FAA governs all aspects of this Agreement." This Court will presume that "a party who signs a contract knows its contents." *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding). Further, "[a] party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 876 (Tex.App.–El Paso 2005, orig. proceeding). This Court finds that the FAA applies to the Agreement between the Real Party and the Relators, because the express language of the Agreement is controlling.

Second, and putting aside the argument that the Real Party in Interest is no longer bound by the Agreement because ReadyOne was not a party to the Agreement, there is no dispute that the agreement to arbitrate, which is a contract, was entered into and executed properly. Torres executed and accepted the Agreement with NCED on February 23, 2005, which is evidenced by her signature. As stated above, this Court will presume that "a party who signs a contract knows its contents." *Cantella & Co.*, 924 S.W.2d at 944, and "[a] party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d at 876. As the Relators point out, an arbitration agreement requiring both parties to submit to arbitration constitutes sufficient consideration for the formation of an enforceable contract. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (citing *In Re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding)). In the present case the record is clear that the Agreement was assented to by the Real Party and that sufficient consideration existed under Texas law to make the Agreement an enforceable contract. Moreover, the Real Party's brief and the record is absent of an argument that the underlying

Agreement between NCED and her is somehow not valid. Because of the facts and controlling law, an enforceable agreement did exist between NCED and the Real Party.

After showing that a valid and enforceable agreement exists under the FAA, the Relators must also present evidence to show that the claim by the Real Party is within the scope or coverage of the agreement. *In re Bank One, N.A.*, 216 S.W.3d at 826. The arbitration agreement between the Real Party and Relators, as it relates to the underlying claim, is specifically covered in paragraph 5(a) of the Agreement. In part, paragraph 5(a)(i) reads as follows: "This Agreement is mutual, covering all claims that Company or Claimant may have which arise from . . . [a]ny injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, . . . ." The Real Party's claim falls squarely within the Agreement signed by her while employed with NCED, and because she injured her shoulder while on the job, and she claims that the Relators' negligence led to her injury, the Agreement covers her claim, subject to this Court's analysis of whether the Agreement is still binding and in force. This Court finds that a valid FAA agreement was entered into by NCED and the Real Party. The claims asserted in the underlying cause are within the scope of the Agreement. The next section will determine if the Agreement is still in force between the Relators and the Real Party.

Arbitration of disputes is strongly favored both under Texas and federal law. *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983); *Brazoria County v. Knutson*, 176 S.W.2d 740, 743 (1943)). Because of this policy decision by both governments, the Real Party has a steep hill to climb in having an enforceable arbitration agreement nullified. Positive

law, like a statutory exception, or case law rooted in equity would be essential in having a court not enforce a valid arbitration agreement. A hypothetical example of such law, in the present case, would be an exception contained in the FAA or an equitable remedy relieving a party of its obligation in the case of a corporate change which falls short of a fundamental corporate change like a merger, dissolution, or hostile takeover, which affects the corporate existence.

In the present case the Real Party makes the novel argument that because NCED is now ReadyOne and because ReadyOne (formerly NCED) has amended and restated its certificate of formation, the Agreement in not enforceable. The crux of this argument is that when a business entity substantially changes its character, and the changes fall short of ending or making a new corporate existence, prior obligations with contracting parties are void or nullified, because the new party was not a signatory to prior obligations. For this to be true, it must be shown that ReadyOne is not merely rebranded but is a new entity under Texas law.

Texas has already tackled the impact of a name change on an arbitration agreement. The *H&R Block* court found "[u]nder ordinary legal principles, a contracting party that has merely changed its name is still a contracting party." *In re H & R Block Financial Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) (citing, e.g., *Coulson v. Lake LBJ Mun. Util. Dist.*, 781 S.W.2d 594, 595 (Tex. 1989); *Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628, 630 (1941)). "Accordingly, the company's change of name does not prevent it from invoking its own arbitration agreements." *Id*.; *see also Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 207 (2d Cir. 2005); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir. 1993). It is clear that in Texas a corporate name change does not affect the contractual obligations of parties existing prior to the name change, so a business entity with a new name may invoke an arbitration agreement that was signed by the same company prior to the name

change.

No clear authority exists on what impact a restated corporate purpose or other amendments to the certificate of formation has on contractual obligations in existence at the time of the changes. In *Contec* the Second Circuit Court of Appeals found that even when there had been corporate name and form changes, the surviving entity should be permitted to enforce the agreement. *Contec Corp.*, 398 F.3d at 210. The rational of *H&R Block* and *Contec* thus suggests that name changes do not eliminate contractual obligation in place before these changes. NCED restated and made amendments to its certificate of formation. Amendments and restatements do not create a new entity. When the term amendment and restate are given their plain meanings, the terms do not mean to "create a new." This is evidenced by two items in the Secretary of State's communications with ReadyOne and NCED. First, the Secretary of State now refers to ReadyOne as formerly: NATIONAL CENTER FOR EMPLOYMENT OF THE DISABLED. Second, in ReadyOne's certificate of filing, the filing number is 112382901; identical to NCED's certificate of filing. By referring to ReadyOne as formerly NCED and by keeping the file numbers the same, the Secretary of State is putting the public on notice that the two entities are the same under Texas law.

The Texas Business Organizations Code (BOC) also supports the finding that ReadyOne is merely a rebranded NCED. First, under the BOC a corporation has a perpetual existence unless otherwise stated in the certificate of formation. TEX.BUS.ORG.CODE ANN. § 3.005(a)(4) (Vernon Supp. 2008). Changing a corporate name or form does not end this perpetual existence. Specifically, to terminate a corporate existence, the business entity must conduct a windup. TEX.BUS.ORG.CODE ANN. § 11.052. During this windup the entity must discharge its property to satisfy its obligations. *Id.* Most importantly, after the windup is complete, the entity must file a

certificate of termination. TEX.BUS.ORG.CODE ANN. § 11.101. So, the corporate entity does not cease to exist until the termination is filed. TEX.BUS.ORG.CODE ANN. § 11.102. Based on the evidence before this Court, NCED still exists, but now it has a new operating name and restated purpose. Neither the Real Party nor Relators were able to find law indicating that a series of amendments or restaments of corporate purpose makes an entity a new company and thus relieving underlying contractual obligations. A corporation in Texas is permitted to freely restate or amend its certificate of formation. TEX.BUS.ORG.CODE ANN. §§ 3.056, 3.057. Absent in the Texas BOC is a provision which supports the Real Party's argument. Because no law supports the Real Party's argument that ReadyOne is nothing more than a rebranded NCED, and because NCED is still in existence in the eyes of Texas, this Court finds that the arbitration can be invoked by ReadyOne (formerly NCED).

**WAIVER**

A party waives the right to arbitrate by substantially invoking the judicial process to the other party's detriment or prejudice. *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (orig. proceeding). Waiver is a legal question for the court based on the totality of the circumstances, and asks whether a party has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *See id.* (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008)). Waiver must be decided on a case-by-case basis, and courts should look to the totality of the circumstances involved. We consider factors such as when the movant knew of the arbitration clause, how much discovery has been conducted, who initiated it, whether it related to the merits rather than arbitrability or standing, how much of it would be useful in arbitration, and whether the movant sought judgment on the merits. *Perry Homes*, 258 S.W.3d at 591-92.

The Real Party in Interest argues that the litigation process has been substantially invoked, because both sides have completed extensive discovery, which goes to the merits of the case. The Relators made a request for disclosure, eight interrogatories, fifteen requests for production, and conducted two depositions. The request for disclosure, eight interrogatories, and fifteen requests for production were made on March 14, and 18, 2008. Relators filed their motion to compel arbitration on October 1, 2007, but the trial court did not rule on the motion until March 10, 2008. On April 30, 2008, Relators filed a motion to reconsider compelling arbitration, which was denied.

The discovery was conducted after the motion to compel arbitration was denied. We do not find that this conduct acts as a waiver. From the beginning of this litigation the Relators have

attempted to invoke the arbitration agreement. In their first pleading, the Relators expressed that the arbitration agreement precludes state court litigation. Relators have not filed any affirmative claims for relief nor sought any judgments on the merits. They proffered two witnesses for deposition explicitly stating that the deposition was subject to an upcoming motion to reconsider the denial of the motion to compel arbitration. However, there is no record of the content of those depositions. The Real Party argues that all medical records have been exchanged, but this is not represented in the Relators' Record. The only medical document in the record is an Accident Investigation Report, which indicates that the Real Party is experiencing pain in her left shoulder. Critical to this type of litigation would be the diagnoses of her condition by a medical doctor and some testimony that her condition could be caused by her workplace duties.

Based on the totality of the circumstances, the discovery conducted in this case does not amount to substantially invoking the litigation process. The Texas Supreme Court has found that eighteen interrogatories and one set of nineteen requests for production did not waive the right to compel arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998). The Texas Supreme Court has also found that taking four depositions does not waive the right to arbitrate. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006). In *Vesta Ins. Group*, the Court found "the record does not show whether these requests were limited or extensive, whether they sought information for affirmative claims or defensive ones, or even whether they addressed the merits or merely the arbitration issue." *Id*. The same is true in this case. The content of the depositions is not available for this Court to review, nor was it available for the trial court to review in the Real Party in Interest's response in opposition to Defendant's motion to reconsider compelling arbitration. Most importantly, the Relators did not try to hide their desire to arbitrate this claim. In fact they tried twice to compel arbitration, once before any discovery had been

completed.

Crucial to the *Perry* outcome was the fact that the party seeking to arbitrate waited until fourteen months after the case was filed to assert the right to do so.

> 14 months after filing suit and shortly before the December 2001 trial setting, the Culls changed their minds and requested arbitration. They justified their change of heart on the basis that they wanted to avoid the delays of an appeal. But their change unquestionably delayed adjudication of the merits; instead of a trial beginning in a few days or weeks, the plenary arbitration hearing did not begin until late September of 2002-almost ten months after the Culls abandoned their trial setting. Moreover, to the extent arbitration reduces delay, it does so by severely limiting *both* pretrial discovery *and* post-trial review. Having enjoyed the benefits of extensive discovery for 14 months, the Culls could not decide only then that they were in a hurry.

*Perry Homes*, 258 S.W.3d at 596-97. The court was clear to point out that while they found that the Culls had substantially invoked the judicial process that was only one part of a totality of the circumstances review. *Id.* at 596.

Thus, we should also look at the conduct of the parties. *Id*. In this case it is clear that the Relators desired to arbitrate the claim pursuant to an enforceable arbitration agreement from the early stages of the litigation. If the Supreme Court in *Perry* could have hung its hat solely on the amount of discovery that had been completed, it would not have continued to review how the Culls originally objected to arbitration, and then fourteen months later argued they were entitled to arbitrate.

We resolve any doubts that we have regarding waiver in favor of arbitration. *Nw. Constr. Co. v. Oak Partners, L.P.*, 248 S.W.3d 837, 847 (Tex.App.–Fort Worth 2008, pet. denied). Considering the above in addition to the totality of the circumstances, we disagree that Relators waived their right to compel arbitration, because they have not substantially invoked the judicial process.

We also find that the Real Party has not shown that she will be prejudiced by arbitration. *Fleetwood Homes of Tex., L.P.*, 257 S.W.3d at 694. Contrary to the assertions of the Real Party, the litigation process will not have to start over if the parties arbitrate this case. There is no evidence that the discovery already obtained could not be used at arbitration. Absent a showing that some evidence discovered would not be attainable in arbitration, no prejudice has occurred. *In re Bruce Terminix Co.*, 988 S.W.2d at 704.

**DELAY**

We also find the Real Party's inexplicable delay argument unpersuasive. While some time did occur between the motion to compel and the date the trial court ruled on the motion, it is unclear from the record what caused the delay. On September 14, 2007, Relators answered the petition and raised its right to arbitrate. On October 1, 2007, Relators filed their motion to compel arbitration. A hearing was had on the motion, and the trial judge gave the Relators extra time to supplement the motion to compel, which they did on October 29, 2007. The trial court did not rule on the motion until March 10, 2008. The record is simply too unclear for this Court to determine if a second hearing was supposed to be conducted after October 29, 2007. It is entirely possible that the trial court intended to make its ruling with the evidence it had before it, and it took over four months for the trial court to issue its ruling.

Accordingly, we conclude that the record does not provide the trial court with discretion to find Relators waived their right to arbitration. We conditionally grant ReadyOne's and Amalia Lopez's petition, and request the trial court to vacate its order denying the Relators' motion to compel arbitration, to issue an order compelling Torres to arbitrate her claims, and to stay all proceedings pending arbitration. Only if the trial court fails to comply with these directions shall we instruct the Clerk to issue the writ.

DAVID WELLINGTON CHEW, Chief Justice

August 19, 2009

Before Chew, C.J., McClure, and Gomez, Judge
Gomez, Judge, sitting by assignment