**EL PASO HEALTHCARE SYSTEM, LTD., and Sun Towers/Vista Hills Holding Company d/b/a Las Palmas Medical Center, Appellants,**

v.

**Bernadine GREEN, Appellee.**

No. 08–14–00252–CV

Court of Appeals of Texas, El Paso.

February 29, 2016

Joseph L. Hood Jr., Windle, Hood, Alley, Norton, Brittain & Jay, LLP, El Paso, TX, for Appellant.

Lynn Anne Coyle, The Law Office of Lynn Coyle, PLLC, El Paso, TX, for Appellee.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

YVONNE T. RODRIGUEZ, Justice

Bernadette Green sued her employers, El Paso Healthcare System, Ltd. and Sun Towers/Vista Hills Holding Company (collectively Las Palmas), for wrongful termination. Las Palmas moved to arbitrate. Unlike many of this Court's other arbitration cases, however, Green did not dispute that the agreement existed, nor did she offer any contractual defenses against enforcement.

Instead, her sole argument below was that Las Palmas waived its right to arbitrate by answering her suit, filing special exceptions, agreeing to joint trial preparation arrangements and an eve-of-trial continuance, and conducting nineteen months of merits discovery before moving to arbitrate one hour after receiving a second motion to compel withheld discovery and with three months to go until trial. The employer does not dispute that it had the arbitration agreement in its constructive possession at the inception of litigation.

The trial court denied the motion to compel. In one issue, Las Palmas asks us to overturn the trial court's order and compel arbitration ourselves. We will affirm.

## BACKGROUND

Green, a fifty-five-year-old African-American woman, worked as a laboratory manager at Las Palmas Medical Center. Although initially an employee of Las Palmas' contractor LabCorp, Las Palmas became her direct employer on March 17, 2010. At the time she became a direct Las Palmas employee, Green signed an arbitration agreement, which was kept in her personnel file. On July 27, 2011, Las Palmas fired Green.

After filing a discrimination and retaliation charge with the United States Equal Employment Opportunity Commission, before which Las Palmas entered an appearance, Green sued for race discrimination and retaliation in district court on October 2, 2012. Las Palmas answered and filed special exceptions. On November 30, 2012, Las Palmas served Green with its first set of interrogatories and request for production. In the interrogatories, Las Palmas asked Green, *inter alia,* who she talked to at the company regarding her discrimination claim after separating from the company, when they spoke, and what

they spoke about; what efforts she had made to find employment since her separation; who her previous employers were; whether she had received wage benefits; whether she had previously been party to a civil action; and whether she had sought mental health services related to her termination. Las Palmas also requested production of all documents she had submitted to or received from the EEOC or the Texas Workforce Commission, as well as any documents Las Palmas had given her or any other evidence relating to her discrimination claim. Green responded to Las Palmas' discovery requests on February 11, 2013.

On September 25, 2013, Green served interrogatories and requests for production on Las Palmas. Green's twenty-two interrogatories touch generally on Las Palmas' hiring and firing practices, procedures, and policies. Green also sought information on employees who had been disciplined or fired within the last five years, as well as any previous discrimination suits or complaints. Green's fifty-nine requests for production included her personnel file, which contained the arbitration agreement at issue here.

In September 2013, the trial court issued notice of intent to dismiss for want of prosecution and a show-cause order. Following a hearing, trial was set for June 2, 2014. In January 2014, Green deposed Las Palmas Department Director Elizabeth Zubia and Human Resources Director Yolanda Carrillo. Las Palmas also sought to depose Green, but then cancelled the deposition due to a scheduling conflict. On January 30, 2014, Green moved to compel production of discovery documents.

Almost a month later, on February 24, 2014, the parties entered into an agreed discovery control plan and scheduling order and were slated for a pretrial hearing on May 29, 2014, at which point the parties

agreed to furnish their trial exhibits and proposed jury charges. In March 2014, Las Palmas produced 4,000 pages of discovery documents, which represented the bulk of what Green had asked for. In light of the voluminous discovery production, the parties jointly moved to continue the June 2014 trial setting to August 11, 2014.

On May 15, 2014, at 5:07 p.m., Green electronically filed her second motion to compel production of the remaining discovery materials. At 6:20 p.m. that same day, Las Palmas filed its motion to compel arbitration. The trial court denied Las Palmas' arbitration request. This appeal followed.

## DISCUSSION

### *Standard of Review*

█ We review a trial court's denial of a motion to compel arbitration for abuse of discretion, deferring to factual determinations supported by the evidence. *Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 520 (Tex.App.—El Paso 2013, no pet.). We review legal questions *de novo*, including the question of whether a party has waived arbitration by conducting litigation. *Id.*

█ "A party waives its right to arbitration by substantially invoking the judicial process to the other party's detriment or prejudice." *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 543 (Tex.2014). "The judicial process is substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration." *Seven Hills Commercial, L.L.C. v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 721 (Tex.App.—Dal-

las 2014, pet. denied). "[P]rejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex.2008)[Internal quotations makes and citation omitted]. There is a strong presumption against waiver of arbitration. *Id.* "Whether a party has waived arbitration must be decided on a case-by-case basis, based upon an examination of the totality of the circumstances." *Ellman*, 419 S.W.3d at 519. Factors considered in deciding whether a party waived arbitration include:

1) whether the party who pursued arbitration was the plaintiff or the defendant;

2) how long the party who pursued arbitration delayed before seeking arbitration;

3) when the party who pursued arbitration learned of the arbitration clause's existence;

4) how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;

5) how much time and expense has been incurred in litigation;

6) whether the party who pursued arbitration sought or opposed arbitration earlier in the case;

7) whether the party who pursued arbitration filed affirmative claims or dispositive motions;

8) how much discovery has been conducted and who initiated the discovery;

9) whether the discovery sought would be useful in arbitration;

10) what discovery would be unavailable in arbitration;

11)  whether activity in court would be duplicated in arbitration;

12)  when the case was to be tried; and

13)  whether the party who pursued arbitration sought judgment on the merits.

*Ellman,* 419 S.W.3d at 519–20.

### *Analysis*

In applying the *Ellman* factors, we agree that Las Palmas substantially invoked the judicial process and thereby waived any right to arbitrate. We acknowledge that Factor Seven militates in favor of Las Palmas, given that Las Palmas did not file affirmative counterclaims or dispositive motions. Likewise, Las Palmas did not attempt to defeat arbitration at one point in the proceeding only to revive it at another point (Factor Six). However, the remaining factors weigh heavily in favor of waiver.

Las Palmas was the party that sought arbitration (Factor One). Las Palmas waited nineteen months before seeking arbitration (Factors Two and Five). It moved for arbitration shortly after jointly agreeing to a trial continuance for the ostensible purposes of facilitating a pretrial settlement, and at the time of Las Palmas' motion, trial was four months away (Factor Twelve). Las Palmas admitted that it had a copy of the arbitration agreement in Green's personnel file, which was in its possession at the inception of litigation, and no explanation exists as to why Las Palmas waited to deploy the agreement (Factor Three). *See Ellman,* 419 S.W.3d at 520 (knowledge of arbitration agreement and its terms are imputed to signatories); *compare EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996)(no waiver where party waited ten months before moving to arbitrate because the party did not learn of the agreement's existence until litigation had already begun). Prior to the motion to compel at issue, Las Palmas never filed any pleading indicating its preference for arbitration, and none of its discovery requests went to arbitrability issues (Factor Four). *See Adams v. StaxxRing, Inc.,* 344 S.W.3d 641, 649 (Tex.App.—Dallas 2011, pet. denied)(discovery going towards merits issues weighs in favor of waiver). Rather, Las Palmas' pleadings indicated that it sought judgment on the merits in its favor, and "that upon final trial, judgment be rendered that Plaintiff take nothing ..." (Factor Ten). Las Palmas also initiated discovery (Factor Eight), and its requests were broadly related to merits issues that it could have also used in an arbitration proceeding (Factor Nine). *Id.; Ellman,* 419 S.W.3d at 519–20.

■■  Las Palmas insists that its pretrial activities were not sufficient to invoke the judicial process, given that at core, all it did was participate in limited discovery and trial scheduling activities.[1] Las Palmas is correct that mere participation in discovery is not enough to prove implied waiver of arbitration. *Lucchese Boot Co. v. Licon,* 388 S.W.3d 365, 373–74 (Tex. App.—El Paso 2012, no pet.); *In re ReadyOne Indus., Inc.,* 294 S.W.3d 764 (Tex.App.—El Paso 2009, orig. proceeding). Whether discovery substantially invokes the judicial process depends on con-

---

1.  Las Palmas cites two cases in support of its position that answering a petition, conducting limited discovery, and participating in docket management is legally insufficient to show substantial invocation. *See In re Fleetwood Homes of Tex., L.P.,* 257 S.W.3d 692, 694–95 (Tex.2008)(orig.proceeding); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87 (Tex.1996)(per curiam). However, both of those cases deal with whether the movant's actions prejudiced the non-movant, not whether the movant substantially invoked the judicial forum. *In re Fleetwood Homes,* 257 S.W.3d at 694; *EZ Pawn Corp.,* 934 S.W.2d at 90.

text, not a "mechanical application" of "black and white" rules. *See Perry Homes,* 258 S.W.3d at 592–93 (noting that in determining whether litigation undertaken is "substantial" for purposes of waiver, "three or four depositions may be all the discovery needed in one case, but purely preliminary in another"). Las Palmas also notes that "mere delay in moving to compel arbitration is not enough for waiver," *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.,* 455 S.W.3d 573, 576 (Tex.2015).

Even so, we believe that Las Palmas' discovery and trial preparation activities here constituted implied waiver of its right to arbitrate. In reaching this conclusion, we are guided by our recent waiver decision earlier this term in *Hogg v. Lynch, Chappell & Alsup, P.C.,* 480 S.W.3d 767, 782 (Tex.App.—El Paso 2015, no pet. h.). In *Hogg,* as in this case, the defendant filed solely merits-related pleadings and actively participated in an abbreviated discovery period agreed to by both parties until it became apparent that she would face imminent discovery sanctions for failing to turn over a key piece of evidence. *Id.* At that point, she moved to arbitrate. The trial court rejected her motion to compel arbitration, and this Court affirmed, stating that she had substantially invoked the litigation process by waiting to arbitrate until after it became clear that the trial court was not receptive to her arguments:

> [I]n light of the fact that Ms. Hogg admittedly knew about the arbitration clause from the outset of the litigation, we conclude that her conscious and informed decision to litigate her dispute in a judicial proceeding and to invoke the arbitration clause only after receiving the trial court's adverse ruling was more consistent with a 'late game tactical deci-

sion' than a true intent to preserve the right to compel arbitration.

*Id.,* at 791.

■ *Hogg* makes clear that a motion to arbitrate filed in anticipation of an adverse discovery ruling or impending discovery sanction may support an inference that a movant sought arbitration as a way to press the reset button and tactically avoid the consequences of its choice to litigate, particularly where the movant has previous knowledge of the arbitration agreement's existence. *Id.,* at 791. Thus, in addition to the *Ellman* factor discussed previously, the fact that Las Palmas knew about the arbitration agreement at the outset of litigation but sought to arbitrate only an hour after receiving Green's second motion to compel production of materials that were still outstanding after nineteen months of discovery, with trial less than three months away after being mutually reset only weeks prior, is another factor that propels this case past the limit of mere delay.

■ Finally, Las Palmas maintains that the fact that it moved for arbitration as the trial date approached is not an important factor to consider, given that it did not move for arbitration on the literal eve of trial. "The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here." *Perry Homes,* 258 S.W.3d at 596. "While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred." *Id.* at 600 (citing *Republic Ins. Co. v. PAICO Receivables, L.L.C.,* 383 F.3d 341, 346 (5th Cir.2004)).

In this case, Las Palmas jointly moved to continue this case two months before

trial on the merits was slated to begin. We review the movant's actions in the context of litigation as a whole, and when viewed in context, the timeline and sequence of events at play make Las Palmas' agreement to continue trial suspect. Trial had originally been set for June 2, 2014. About two months before trial, on March 31, 2014, the parties mutually agreed to continue trial until August, partially due to counsels' trial conflicts, but also in order to complete discovery and to "adequately review ... documents" in light of voluminous discovery exchanges. The parties also represented that they "believe[d] that once they have had an opportunity to fully review the documentation at issue in this case, they will be able to earnestly prepare for and participate in mediation that will render trial of this matter unnecessary." Two months later, Las Palmas moved to arbitrate after Green moved to compel production of outstanding discovery Las Palmas had already previously resisted handing over.

Las Palmas' acquiescence with this joint motion for continuance so close to trial was done for the explicit purposes of reviewing and completing discovery with the hopes that mediation efforts could render trial unnecessary. Particularly after Las Palmas initiated merits-directed discovery, this motion to continue evinced an apparent desire to continue litigation and resolve this case in a judicial forum, not an arbitral one. Yet by moving to continue the trial to ostensibly facilitate settlement, then moving to arbitrate a month later when Green persisted in her request for outstanding discovery on the eve of trial, Las Palmas took a position inconsistent with its prior invocation of the litigation process. Under the circumstances, we may infer that Las Palmas substantially invoked the litigation process when it believed a favorable outcome was forthcoming, but then tactically sought to deploy the arbitration agreement as a last-minute fail-safe measure aimed at preventing Green from receiving information favorable to her for use at the rapidly-approaching trial. *Hogg*, 480 S.W.3d at 782.

### Prejudice

■ "Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result." *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998)(orig.proceeding). Here, Green could not resist arbitration on waiver grounds unless she also proved arbitration would prejudice her. We find that she met her burden here.

■ Prejudice may take the form of "considerable delay, expense, and damage to [the nonmovant's] legal position." *Ellman*, 419 S.W.3d at 522. We agree that based on the record before us, we have no information as to cost. However, "[a] party opposing arbitration is not always required to prove the cost of the extensive discovery in order to prove prejudice." *Ellman*, 419 S.W.3d at 522. Cost is only one dimension of prejudice. Where the movant deploys an arbitration agreement to tactically switch from one forum to another, the non-movant may show prejudice. *Id.* at 522 (prejudice found where defendant did not move to arbitrate until plaintiff already revealed trial strategy in pleadings); *see also Hogg*, 480 S.W.3d at 793.

Here, prejudice to Green occurred on two fronts. First, Las Palmas' motion to arbitrate deprived Green of the opportunity to have the trial court rule on her outstanding motion to compel discovery, and we are able to discern the content of her previous discovery requests. *Cf. IBS Asset Liquidations, L.L.C. v. Servicios Multiples Del Norte S.A. De C.V.*, 419

S.W.3d 573, 575–76 (Tex.App.—San Antonio 2013, pet. denied)(in split decision, court of appeals finds no prejudice because it could not tell from "sparse record" what contents of discovery requests were and complaints about delay were too generalized). Concededly, the arbitration may have ruled the same way as the trial court and allow the same evidence to be used at arbitration, but "[b]ecause arbitrators have almost unbridled discretion regarding discovery, it is virtually impossible to determine what the arbitration panel might do on this issue." *Hogg*, 480 S.W.3d at 794 [Internal quotation marks omitted]. As such, we cannot assume that Green would have been placed in the same position before the arbitrator as she would have been had the trial court ruled. In *Hogg*, the movant sought to re-litigate a discovery ruling the trial court already made and avoid the possibility of an impending discovery sanction. Here, although the gavel had not yet fallen with respect to Green's second motion to compel, the totality of the circumstances strongly suggest that an attempt to elude discovery requests could have been a motivating factor.

Second, the temporal proximity to trial also weighs in favor of a prejudice finding. While length of delay is not dispositive, it is certainly a factor we may consider. *See Hogg*, 480 S.W.3d at 786; *cf. In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141–42 (Tex.App.—Dallas 2009, orig. proceeding)(no prejudice where delay was only seventy-three days from answer to motion to compel, movant never requested discovery, and non-movant never objected to pre-arbitration inspection of property). Las Palmas' filing of the motion to arbitrate ensured, three months prior to trial, that Las Palmas could successfully evade a trial on the merits, an event nineteen months in the making, regardless of how the trial court ruled. If the motion was granted, Las Palmas could successfully change forums and avoid a jury trial; if not, it could force an interlocutory appeal that would further delay the case until the matter was submitted for appellate consideration more than a year later. In any event, agreeing to a continuance to facilitate a pretrial settlement, then moving to arbitrate on the eve of trial when a settlement cannot be reached, demonstrated an inconsistent intent as to whether the case would proceed in a judicial forum that prejudiced Green. *Hogg*, 480 S.W.3d at 782, 796 (framing invocation inquiry in terms of whether motion for arbitration was inconsistent with a prior apparent intent to litigate in court and prejudice inquiry in terms of whether came too late in the litigation process); *cf. In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002)(orig.proceeding)(no prejudice shown from delay in moving to compel arbitration and opposition to trial setting in state court because movant was seeking stay in federal court, showing movant had consistent intent to not invoke state judicial process). These factors are sufficient to allow Green to prove the second facet of the waiver analysis. The trial court did not err by denying the motion to compel arbitration.

## CONCLUSION

Arbitration exists as an alternative to litigation, not as an alternative to the adverse outcomes borne from a party's choice to litigate. Although Texas courts will enforce valid arbitration agreements and will strongly resolve any doubts in favor of arbitration, we do not condone brinksmanship, and we cannot allow parties who have substantially invoked litigation to strategically keep arbitration agreements in their back pockets as a failsafe, or to deploy them on the eve of trial as a delay tactic to gain interlocutory review. Such a situation undermines the integrity

of the judicial forum and subverts the purpose of arbitration as a genuine means of alternative dispute resolution.

Issue One is overruled. The judgment of the trial court is affirmed.