

# NUMBER 13-20-00240-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DISH NETWORK L.L.C. AND
LORI ANN SULLIVAN,                                               Appellants,

v.

DEBORAH C. ALEXANDER,                                              Appellee.

On appeal from the 357th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Justice Benavides

Appellants, DISH Network L.L.C. (DISH) and Lori Ann Sullivan, bring this accelerated interlocutory appeal following the trial court's denial of their Motion to Compel Arbitration and Stay Proceedings (Motion to Compel Arbitration). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016. This appeal involves two primary issues: (1) whether the trial

court abused its discretion by sustaining objections to portions of affidavits submitted by DISH; and (2) whether the trial court abused its discretion by refusing to compel arbitration. We reverse and remand.

## I.    BACKGROUND

Around August 23, 2004, EchoStar Communication Corporation (EchoStar) hired appellee Deborah C. Alexander to work in its customer service center. The same day, Alexander signed a document titled "Mandatory Arbitration of Disputes—Waiver of Rights Agreement." This arbitration agreement was on EchoStar's letterhead and was between "Alexander" and "[EchoStar] and all of its affiliates (the term 'affiliates' means companies controlling, controlled by or under common control with, [EchoStar])." The arbitration agreement provides, in pertinent part, as follows:

> In consideration of [Alexander's] employment by EchoStar (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, [Alexander] and EchoStar agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to [Alexander's] application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration.

Alexander's signature appeared in the arbitration agreement's designated signature block, whereas EchoStar did not have a signature block to sign.

On December 6, 2007, EchoStar filed a "Preliminary Information Statement" with the United States Securities and Exchange Commission (SEC). This document provided notice that EchoStar would be changing its name to "DISH Network Corporation" to reflect its decision to focus on direct broadcast satellite subscription television services.

2

To complete the name change, EchoStar filed a "Definitive Information Statement" and 2008 Form 10-K with the SEC, as well as Certificates of Amendment of Articles of Incorporation with multiple states, including Texas. These documents described DISH Network Corporation as the company "formerly known as [EchoStar]." Following the change of name, DISH Network Corporation retained the same United States Internal Revenue Service (IRS) Employer Identification Number previously assigned to EchoStar.

DISH Network Corporation also completed a spin-off of "technology and certain infrastructure assets into a separate publicly traded company, EchoStar Corporation," which was "formerly known as EchoStar Holding Corporation." This company was incorporated in 2007, and according to an affidavit by DISH Network Corporation's Senior Manager of SEC Reporting, customer service centers were not included in the spin-off and remained under the control of DISH Network Corporation. DISH is an affiliate and subsidiary of DISH Network Corporation.

On February 18, 2019, Alexander filed suit against DISH for discrimination in violation of the Texas Labor Code. Alexander also brought claims against DISH and Sullivan, a DISH employee, for theft and conversion related to two eight-foot folding tables and calendars that Alexander alleges were left at the DISH customer service center where she worked.

DISH filed a "Motion to Compel Arbitration," arguing, among other things, that a valid and enforceable arbitration agreement existed under the Federal Arbitration Act (FAA), and that Alexander's claims fell within the agreement's scope. DISH's motion also stated that Alexander's claims against Sullivan are subject to the arbitration agreement

due to Sullivan's position as an employee of DISH who was acting on behalf of her employer, DISH. DISH submitted an affidavit by its Senior Human Resources Manager, Katherine Leyba, to authenticate the arbitration agreement.

Alexander responded that the arbitration agreement was not valid because (1) DISH is not a party to the agreement; (2) DISH did not sign the agreement; and (3) the claims do not fall within the scope of the alleged arbitration agreement. Alexander also objected to Leyba's affidavit, particularly paragraphs 3 and 5, which state:

3. DISH's corporate headquarters are located in Englewood, Colorado. DISH is controlled by or under common control with DISH Network Corporation, which was formerly known as [EchoStar]. DISH is considered an affiliate of DISH Network Corporation. DISH provides satellite television services to millions of customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a Direct Broadcast Satellite ("DBS") system.

5. As a Senior Human Resources Manager who previously oversaw the DISH customer service center in Harlingen, Texas, I am familiar with the employment and personnel file of Ms. Alexander. As a condition of her employment with DISH, Ms. Alexander was required to sign the Arbitration Agreement entitled "Mandatory Arbitration of Disputes - Waiver of Rights Agreement" ("Arbitration Agreement") when she was hired on or about August 23, 2004.

Alexander objected that the statements are conclusory, are inconsistent with public records, violate the best evidence and parol evidence rules, and are not based on Leyba's personal knowledge.

As part of its reply, DISH attached an affidavit by its Senior Manager of SEC Reporting, Kimberly A. Culig, to verify the attached documents associated with the corporate name change. Alexander then filed a sur-reply, whereby she generally objected to Culig's statements that (1) the arbitration agreement bears Alexander's signature, and (2) DISH Network Corporation was formerly known as EchoStar. Alexander reurged the

4

same objections raised with Leyba's affidavit. Additionally, Alexander argued for the first time in her sur-reply that the arbitration agreement is unconscionable because it waives common law punitive damages by stating "the right . . . to common law claims for punitive and/or exemplary damages are of value and are waived pursuant to this agreement."

On June 9, 2020, after hearing the parties' arguments, the trial court issued an order denying the motion to compel arbitration. The trial court also sustained Alexander's objections to portions of Leyba's and Culig's affidavits and struck those portions from the record. The trial court stated no basis for either ruling. This appeal followed.

## II.    STANDARD OF REVIEW

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 716 (Tex. App.—Houston, [1st Dist.] 2020, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). The trial court's determination as to the validity of an arbitration agreement is a legal determination that we review de novo. *Henry*, 551 S.W.3d at 115. The strong presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A trial court's ruling on the admissibility of evidence is also reviewed for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011).

5

### III. AFFIDAVITS

The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration. *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App.—El Paso 2014, no pet.). A party can satisfy its evidentiary burden by submitting authenticated copies of an agreement containing an arbitration clause. *ReadyOne Indus., Inc. v. Casillas*, 487 S.W.3d 254, 258 (Tex. App.—El Paso 2015, no pet.). A document is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirement of self-authentication. TEX. R. EVID. 901(a).

While the trial court stated no basis for sustaining the objections to Leyba's and Culig's affidavits, Alexander argues that the objections must be affirmed on the following grounds: (1) lack of personal knowledge; (2) conclusory; (3) violation of the best evidence and parol evidence rules; and (4) inconsistent with public records. We address each ground in turn.

### A. Personal Knowledge

Alexander's first basis for objecting to the affidavits is that each affiant lacked sufficient personal knowledge. An affidavit showing no basis for personal knowledge of the facts asserted is legally insufficient. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). An affiant's position or job responsibilities can qualify the affiant to have personal knowledge of facts and establish how the affiant learned of the facts. *Valenzuela v. State & Cnty. Mut. Fire Ins.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see Wright v. Hernandez*, 469 S.W.3d 744, 751–53 (Tex. App.—El Paso

6

2015, no pet.) (holding that the affiant's position as a human resources manager is sufficient to demonstrate personal knowledge); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (stating that personal knowledge of an investigation into "pirate access devices" can be "reasonably inferred" from the affiant's position as Senior Director of Signal Integrity). The affiant should also explain how they became familiar with the facts in the affidavit. *Valenzuela*, 317 S.W.3d at 553; *see Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.) (deciding the affiant's statement that he had "'knowledge concerning [appellee's] operations and organization'" was sufficient to demonstrate the manner by which the affiant became familiar with the facts).

Here, Leyba stated that she is a Senior Human Resources Manager at DISH and that she oversees matters related to human resources for various DISH customer service centers, including where Alexander worked. Leyba said she is familiar with Alexander's employment and personnel file, which includes the arbitration agreement. Likewise, Culig stated that she is a Senior Manager of SEC Reporting at DISH and that she was "closely involved" in the process related to the name change. By stating their positions and relevant oversight roles at DISH, the affiants established the basis for their personal knowledge regarding the subject of the affidavits. *See Wright*, 469 S.W.3d at 751–53; *Valenzuela*, 317 S.W.3d at 553. We conclude that the trial court abused its discretion if it sustained the objection to Leyba's and Culig's affidavits on the ground that they lack sufficient personal knowledge.

7

**B.      Conclusory**

Alexander next objected on the basis that the affidavits were conclusory. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *See Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 436 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (holding that an affidavit is not conclusory where it "simply summarize[d] the detailed factual content of RREF's ten exhibits"). An affidavit is sufficient evidence only when it gives detailed accounts of the facts it attests to or when it provides supporting documents which tend to support the statements made. *Id.* (citing *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Here, Leyba's and Culig's statements that DISH Network Corporation was formerly known as EchoStar are supported by their personal knowledge. First, each affiant holds a position–Senior Manager–which the trial court could have reasonably inferred required knowledge of DISH's corporate structure. *See DIRECTV, Inc.*, 420 F.3d at 530. Additionally, the statements are not conclusory because numerous public SEC filings, which the affiants relied upon in their statements, show that DISH Network Corporation underwent a corporate name change from EchoStar. *See Rogers*, 533 S.W.3d at 436. We conclude that the trial court abused its discretion if it sustained the objections to Leyba's and Culig's affidavits on the ground that they are conclusory.

**C.      Best Evidence and Parol Evidence Rules**

Alexander also objected to Leyba's affidavit on the grounds that it violates the best evidence and parol evidence rules, and to Culig's affidavit on the ground that it violates

the best evidence rule. Under the best evidence rule, to prove the content of a writing, the original writing is generally required. TEX. R. EVID. 1002. The best evidence rule does not apply "unless a party is seeking to prove the contents of a document." *County of El Paso v. Aguilar*, 600 S.W.3d 62, 78 (Tex. App.—El Paso 2020, no pet.) (quoting *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 828 (Tex. App.—Fort Worth 2006, no pet.)). The parol evidence rule applies when parties have a valid, integrated written agreement and precludes "enforcement of prior or contemporaneous agreements." *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). "The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Id.*

Here, copies of the arbitration agreement and name change documentation were entered into evidence. *See* Tex. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). In any event, Leyba's affidavit was offered as a predicate to authenticate the arbitration agreement; thus, it was not offered to prove the content of any writing. *Cf. Aguilar*, 600 S.W.3d at 78. Furthermore, the affidavit does not contradict, vary, or add to the terms of the arbitration agreement. *Cf Hous. Expl. Co.*, 352 S.W.3d at 469. Likewise, Culig's affidavit does not attempt to prove the contents of the name change documents, but rather was offered as a predicate for their introduction into evidence. The affidavits, therefore, do not violate the best evidence or parol evidence rules. *See Aguilar*, 600 S.W.3d at 78; *Hous. Expl. Co.*, 352 S.W.3d at 469. We conclude that the trial court abused its discretion if it sustained Alexander's

9

objection to the affidavits on these grounds.

**D.    Inconsistent with Public Records**

Alexander's final objection was that the affidavits were inconsistent with public records to the extent that they refer to DISH Network Corporation as being formerly known as EchoStar. The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment. *In re Guerrero*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX. R. CIV. P. 166(a); *see FFP Mktg. Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 410 (Tex. App.—Fort Worth 2005, no pet.) (concluding affidavit insufficient because it directly contradicted attached evidence).

Here, Leyba's and Culig's statements regarding the name change are unequivocally consistent with the attached SEC filings and Certificate of Amendments. We conclude that the trial court abused its discretion by sustaining Alexander's objection to the affidavits on the ground that they were inconsistent with public records.

**E.    Rendition of an Improper Judgment**

Lastly, Alexander argues that even if the trial court's striking of the affidavits' portions was improper, it did not lead to the rendition of an improper judgment. Error is not reversible on appeal unless it "probably caused the rendition of an improper

10

judgment." TEX. R. APP. P. 44.1. A successful challenge to evidentiary rulings usually requires the complaining party to "show that the judgment turns on the particular evidence excluded or admitted." *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27, 44 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.)

Here, the affidavits served as predicates for the authenticity of the arbitration agreement. And, as discussed below, they directly support the existence of a valid and enforceable arbitration agreement between DISH and Alexander. *See* TEX. R. EVID. 901(a). We conclude that improperly striking portions of Leyba's and Culig's affidavits caused the rendition of an improper judgment.

## IV. VALID AND ENFORCEABLE ARBITRATION AGREEMENT

To determine whether the arbitration agreement constitutes a valid agreement to arbitrate, we apply ordinary principles of state contract law. *SK Plymouth*, 605 S.W.3d at 715. The elements of a valid contract, including contracts to arbitrate, are (1) an offer, (2) acceptance, (3) a meeting of the minds, (4) the parties' consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.*

### A. Name Change

Alexander argues that DISH Network Corporation and EchoStar are separate legal entities, and therefore DISH is not a party to the arbitration agreement. Alexander further argues that because her claims are related to DISH and not EchoStar, such claims cannot and do not lie within the scope of the arbitration agreement. For this to be true, it must be shown that DISH Network Corporation is not merely renamed but is a new entity under Texas law.

11

A contracting party that merely changed its name is still a contracting party. *In re H & R Block Fin. Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) (orig. proceeding) (per curiam). Accordingly, a company's change of name does not prevent it from invoking its own arbitration agreements. *Id*; *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 771–72 (Tex. App.—El Paso 2009, orig. proceeding). When this issue was similarly raised after a Texas corporation changed its name and amended its certificate of formation, our sister court held that such changes "do not create a new entity," and therefore contractual obligations are unchanged. *In re ReadyOne Indus. Inc.*, 294 S.W.3d at 771.

Here, the record firmly establishes that DISH Network Corporation is the same entity as EchoStar, now operating under a different a name. First, EchoStar filed a "Definitive Information Statement" with the SEC, stating that it was changing its name to DISH Network Corporation. In the 2008 Form 10-K filed with the SEC, DISH Network Corporation identified itself as formerly known as EchoStar. Furthermore, like the corporation that merely changed its name in *ReadyOne*, EchoStar filed a Certificate of Amendment in multiple states, including Texas, declaring that the company's name was changed to DISH Network Corporation. *See id.* at 771–72. Similiar to where the same filing number was retained following the name change in *ReadyOne*, DISH Network Corporation retained the same IRS Employer Identification Number as when the company was known as EchoStar. *See id.* Lastly, DISH is an affiliate of DISH Network Corporation, and the arbitration agreement explicitly includes affiliates. Therefore, because a company's name change does not prevent it from invoking its own arbitration agreements, DISH is a proper party and may seek to enforce the arbitration agreement that Alexander

12

entered in 2004 with EchoStar before the name change. *See H & R Block*, 235 S.W.3d at 178. Claims against DISH are thus within the scope of the arbitration agreement. We conclude that the trial court abused its discretion if it refused to compel arbitration on this basis.

**B.    Claims Fall Within Scope**

Alexander argues that even if the arbitration agreement was valid and enforceable, her claims against DISH for theft and conversion accrued post-termination and do not fall within the scope of the agreement.

Texas courts resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Henry*, 551 S.W.3d at 115. Arbitration clauses in which the scope is defined using "relating to" and similar wide-reaching phrases are interpreted broadly. *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.). Furthermore, Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992).

The arbitration agreement states that any claim in "any way related" to the employee's "employment" shall be resolved by arbitration. Therefore, because such wide-reaching phrases are interpreted broadly and Texas law favors arbitration, and since Alexander's theft and conversion claims against DISH and Sullivan are related to her employment, we conclude that the claims fall within the agreement's scope. *See Henry*, 551 S.W.3d at 115 (noting that any doubts about an arbitration agreement's scope are

13

resolved in favor of arbitration); *Glassell Producing Co.*, 422 S.W.3d at 78. We conclude that the trial court abused its discretion if it refused to compel arbitration on this basis.

## C. DISH's Signature

Alexander argues that the arbitration agreement is invalid because it does not contain EchoStar's signature. Again, this claim is meritless.

The Supreme Court of Texas has held that a party's signature is not required under the FAA to prove acceptance of an arbitration agreement. *See In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceedings) (per curiam) (noting that the Court has "never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee"). An employer's signature is required to create a valid, binding arbitration agreement only when the express language indicates an intent to be bound by signing. *SK Plymouth,* 605 S.W.3d at 716; *see Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (holding that employer's signature was required because arbitration agreement contained language that the parties needed to sign the agreement to give it effect or to modify it and contained a blank signature block intended for the employer); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding) (holding that signatures were required where, among other things, contract had a signature block intended for the employer); *see also Hi Tech Luxury Imps., LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (mem. op.) (concluding that signature blocks on contract were evidence that signatures from both parties were required).

Here, the arbitration agreement does not require DISH's signature as a condition precedent to its enforceability. Unlike *Huckaba*, *Bunzl*, *and Hi Tech* where the employer's signature was expressly required, the arbitration agreement between DISH and Alexander does not have a blank signature block intended for DISH's signature, nor does it expressly require that the parties sign the agreement to give it effect or to modify it. *See Huckaba*, 892 F.3d at 691–92 (applying Texas law); *Bunzl*, 155 S.W.3d at 211–12; *see also Hi Tech Luxury Imps., LLC*, 2019 WL 1908171, at *2. Rather, because the only signature block in the arbitration agreement was designated for Alexander, and the agreement was printed on EchoStar's letterhead, we find that DISH's signature is not a condition precedent to the arbitration agreement's enforceability.

In the absence of express language indicating a signature requirement, courts determine whether there is an intent to be bound by the arbitration agreement by considering various actions taken by the employer. *See Wright*, 469 S.W.3d at 761 (finding an intent to be bound from affidavits averring that the employer prepared the arbitration agreement, presented the agreement to the employee for her signature, maintained the agreement as a business record after the employee was hired, and then sought to enforce the agreement after the employee filed her lawsuit). Furthermore, we previously considered an arbitration agreement identical to that between DISH and Alexander and concluded that "the undisputed evidence establishes that DISH Network intended to be bound by the Arbitration Agreement." *Dish Network L.L.C. v. Brenner*, No. 13-12-00564-CV, 2013 WL 3326640, at *4–5 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.) (mem. op.).

15

Here, DISH intended to be bound by the arbitration agreement. *See Wright*, 469 S.W.3d at 761. As it does for all employees, DISH prepared the arbitration agreement, presented it to Alexander for her signature, and maintained the agreement in her personnel file. Lastly, through its motion, DISH sought to enforce the agreement. We conclude that the trial court abused its discretion if it refused to compel arbitration on this basis.

**D.       Waiver of Punitive Damages**

Alexander lastly argues that the waiver of common-law punitive damages is unconscionable, thereby rendering the arbitration agreement unenforceable. Again, this claim fails.

In general, a contract is unconscionable and unenforceable if it is "grossly one-sided." *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair. *Id.* at 349. Arbitration agreements that prohibit punitive damages are generally enforceable. *Id.*; *see Inv. Partners v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 318 n.1 (5th Cir. 2002).

Here, the arbitration agreement provides that "common law claims for punitive and/or exemplary damages are of value and are waived pursuant to this agreement." The agreement further states that "nothing in this Agreement limits any statutory remedy to which the Employee may be entitled under law." Thus, while the agreement explicitly waives common law punitive damages, it ensures that statutory remedies are not waived,

16

thereby preserving the signatory's right to statutory punitive damages.[1] Because a punitive damages waiver is valid so long as it does not waive statutory remedies, the arbitration agreement is not unconscionable. *In re Poly-Am., L.P.*, 262 S.W.3d at 349. We conclude that the trial court abused its discretion if it refused to compel arbitration on this basis.

## V. CONCLUSION

We reverse the trial court's order striking the portions of the affidavits and denying appellants' Motion to Compel Arbitration and Stay Proceedings, and remand to the trial court for proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
22nd day of July, 2021.

---

[1] Alexander seeks damages under the Texas Labor Code § 21.258, which is not waived by the arbitration agreement. *See* TEX. LABOR CODE ANN. § 21.258.

17